DIANE HOUSEKNECHT, Plaintiff-Appellee, v. JAMES B. ZAGEL, Director, Illinois Department of Law Enforcement, *et al.*, Defendants.—(The Department of Law Enforcement, Defendant-Appellant; Midwest Steel Erection Company, Inc., *et al.*, Intervening Appellees.)

First District (4th Division)   No. 82—412

Opinion filed January 20, 1983.—Rehearing denied March 3, 1983.

Tyrone C. Fahner, Attorney General, of Chicago (Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellant.

I. Peter Polansky and Andra Gomberg, both of Baum, Sigman and Gold, Ltd., of Chicago, for appellee.

Phelan, Pope & John, Ltd., of Chicago (John M. Christian and Bradley B. Falkof, of counsel), for intervenors-appellees.

PRESIDING JUSTICE ROMITI delivered the opinion of the court:

Defendant-appellant State of Illinois Department of Law Enforcement (appellant) appeals from an order of the circuit court denying appellant's motion to dismiss complaints for preliminary injunction and a temporary restraining order filed by plaintiffs-appellees Diane Houseknecht and Midwest Steel Erection Company (appellees) and granting appellee Houseknecht's motion for a temporary restraining order. The latter order temporarily restrained appellant from conducting any destructive testing on an aerial platform and steel rods involved in a construction accident. Appellant was also ordered not to remove those materials from the jurisdiction of the court and appellees were given the right to inspect those materials.

The principal issue raised by appellant is whether the circuit court had jurisdiction to enjoin appellant's investigatory activities in the manner requested by appellees and as actually ordered by the circuit court. Appellant also contends that under equitable principles the court should not have interfered with the exercise of discretion by public officials and that in any event there was an insufficient basis for granting the temporary restraining order.

We affirm.

Appellee Houseknecht's verified amended complaint for preliminary injunction alleged the following. Houseknecht is the widow of a

construction worker killed on December 11, 1981, at the Illinois Center construction project when an aerial platform gave way. On December 14, 1981, Houseknecht filed a complaint in the circuit court of Cook County for damages arising out of that incident. On the same day Houseknecht obtained a temporary restraining order in that action which ordered those defendants (the defendants in this action were not a party to that action) to give Houseknecht immediate access to the platform and the steel rods for inspection and photographing and further ordering those defendants not to remove those materials from the jurisdiction of the court and not to perform any destructive testing on them. However at some time after December 11, 1981, the defendants in this cause, the State of Illinois Department of Law Enforcement and its director, James B. Zagel, seized those materials. According to the complaint since that time those defendants have limited Houseknecht's access to those materials, have informed her of their intent to take the materials to Champaign, Illinois, in order to conduct destructive testing on them, have refused to advise her of the exact nature of those proposed tests and have refused to permit her representatives to control those tests in any manner. Houseknecht further alleged that the proposed destructive testing would alter and destroy the condition of those materials and would thus destroy evidence of vital importance to her civil lawsuit. She alleged that this testing and the failure to notify her representatives of it so as to allow their presence would irreparably harm her. She also alleged that the defendants were acting beyond their authority in seizing these materials and attempting to conduct destructive testing on them. On these grounds she sought a preliminary injunction which would enjoin the defendants from removing the materials from the jurisdiction of the circuit court of Cook County, enjoin them from performing any destructive testing until further order of court, order them to provide Houseknecht with a list of all proposed tests on those materials fourteen days prior to testing, and bar any testing unless all parties to the suit agreed to the testing or until further order of court.

On January 6, 1982, Midwest was given leave to intervene after it filed a petition for leave to intervene stating that it was the owner of the aerial platform at issue and that it reasonably believed it would be a party to one or more of the lawsuits arising out of that occurrence. In its complaint for temporary restraining order Midwest alleged that on December 11, 1981, following the occurrence, appellant had forcibly removed the aerial platform from the site without a proper warrant or other legal process. Midwest further alleged that appellant

had proposed to conduct certain destructive testing on the platform some time after January 5, 1982. Included in that testing, according to a letter from appellant appended to the complaint, would be procedures involving cutting off the fracture tips on the platform and/or the steel rods, and removal of portions of the surface of the fracture tips. Midwest alleged that its expert consultants had not had an opportunity to inspect the materials held by appellant. Midwest further alleged, on information and belief, that: some of the testing would be conducted outside of Illinois where Midwest's experts would be unable to monitor it; certain of the proposed tests were unnecessary and needlessly destructive of critical portions of the fracture surfaces; certain of the proposed tests were unclear and vague in their nature and scope making it virtually impossible for Midwest and its experts to adequately determine the necessity and appropriateness of those tests; before destructive testing was undertaken certain preliminary nondestructive observations and measurements were necessary; and there were tests better able to generate the information and data sought by appellant. On these grounds Midwest sought an order granting it immediate access to the materials, enjoining appellant from performing destructive testing until Midwest met with it to develop and schedule a systematic testing plan, permitting Midwest to be present during all testing by appellant, and requiring that all testing by appellant be conducted in Illinois.

Also granted leave to intervene in this action were the following individuals and businesses, all parties to various actions arising out of the occurrence: Philip Rios, Gust K. Newberg Construction Company, Paschen Contractors, Incorporated, Murphy/Knight, a joint venture, and Carol Tyson.

Appellant filed a motion to dismiss the complaints of Midwest and Houseknecht on the grounds, *inter alia*, that the relief sought was barred by sovereign immunity. Attached to that motion was the affidavit of defendant Zagel. He stated that on December 11, 1981, he was directed by the Governor of Illinois to investigate the incident that occurred at the construction site. Zagel then directed Commander Thomas Schumpp of the Division of Criminal Investigation to conduct that investigation and further directed him to take custody of the aerial platform and to conduct engineering and metallurgical testing on it in order to determine the cause or causes of the fall of that platform. Zagel further stated that it was his "belief and opinion" that the investigation could not properly be completed without the performance of additional tests upon the platform and other items. Also attached to the motion was the affidavit of Edward Cisowski, a

special agent of the Illinois Department of Law Enforcement, Division of Criminal Investigations. He stated that the materials in question were received from the Chicago Police Department and the Cook County Medical Examiner's Office on December 14, 1981, with the permission of the appropriate officials of those offices. He denied that any employee of the Department of Criminal Investigations had seized or taken possession of any materials from the construction site.

The circuit court scheduled and held a hearing restricted solely to the issue of the court's jurisdiction to enjoin the activities of the defendants. However at that hearing counsel for appellee Houseknecht also moved for the entry of a temporary restraining order. The hearing consisted only of legal argument on the question of the jurisdiction of the court to enjoin the defendants; no evidence was presented. In announcing its determination of this issue the court indicated that it had found that defendants lacked the authority to investigate the accident at issue and for that reason the court had jurisdiction to enjoin elements of that investigation. In a written order dated February 5, 1982, the court denied the motion to dismiss. It also entered a temporary restraining order which: temporarily restrained appellant from conducting any destructive testing on the aerial platform and steel rods; temporarily restrained appellant from removing those materials from the jurisdiction of the court; gave appellees the right to inspect those materials; and gave appellees the right to move for a "permanent injunction" after the expiration of the temporary restraining order. The order specified that it was to remain in force for 10 days. However on February 10, 1982, an agreed order was entered stating that the order of February 5 was to remain in full force and effect until further order of the court.

I

As we have noted the circuit court found that appellant lacked the authority to investigate the accident at issue and for that reason found that the court had jurisdiction to enjoin elements of that investigation. Appellant contends the court erred in finding this lack of investigatory authority and thus the court's orders must be vacated.

We agree that the court erroneously found a lack of investigatory authority in the appellant. Among the powers and duties given by statute to the Department of Law Enforcement are the following:

"4. To (a) investigate the origins, activities, personnel and incidents of crime *** (c) employ skilled experts, scientists, technicians, investigators or otherwise specially qualified persons to aid in preventing or detecting crime, apprehending criminals,

or preparing and presenting evidence of violations of the criminal laws of the State, (d) cooperate with the police of cities *** in enforcing the laws of the State *** (f) conduct such other investigations as may be provided by law. ***.

5. *** (h) employ *** laboratory technicians and other specially qualified persons to aid in the identification of criminal activity ***." (Ill. Rev. Stat. 1979, ch. 127, par. 55a.)

One of appellant's departmental divisions, the Division of Criminal Investigations, is mandated:

"2. to investigate the origins, activities, personnel and incidents of crime and enforce the criminal laws of this State related thereto;

\* \* \*

7. to conduct such other investigations as may be provided by law;

8. to exercise other duties which may be assigned by the Director in order to fulfill the responsibilities and achieve the purposes of the Department." Ill. Rev. Stat. 1979, ch. 127, par. 55a—3.

Defendant Zagel's affidavit established that the Governor had directed him to investigate the accident at issue and pursuant to that investigation he had ordered testing on the aerial platform in order to determine the cause or causes of its fall. As appellant notes although it is premature to state whether or not a crime occurred in connection with the fall of the platform the possibility exists that this investigation may disclose evidence of involuntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—3), or of criminal violations under the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 69).

■ Clearly appellant had the statutory authority to conduct this investigation, and defendant Zagel's affidavit establishes that appellant's proposed testing is an attempt to act in furtherance of that investigation. But contrary to appellant's suggestion on appeal, the trial court's erroneous finding in this regard does not necessarily require a finding that the relief granted by the circuit court was barred by the doctrine of sovereign immunity. A reviewing court will affirm the judgment of a lower court if it finds that judgment to be correct on any ground even though the lower court may have based that judgment on an erroneous ground. *Hunt v. Mitchell* (1951), 409 Ill. 321, 99 N.E.2d 347; *Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 373 N.E.2d 1018.

The 1970 Illinois Constitution abolished sovereign immunity but permitted the legislature to reenact it. (Ill. Const. 1970, art. XIII, sec.

4.) The legislature utilized this power to reinstate sovereign immunity by enacting "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1979, ch. 127, par. 801), which provided:

"Except as provided in 'AN ACT to create the Court of Claims, to prescribe its powers and duties, and to repeal AN ACT herein named', filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court."

■ In determining whether an action is against the State of Illinois and thus prohibited by law the courts will not only look to the identity of the formal parties but also will consider the issues involved and the relief sought. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 384 N.E.2d 310; *Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 396 N.E.2d 1150.) Thus, when a suit brought against a State officer alleges that the officer has performed acts which are illegal or beyond his authority or has acted under the authority of an unconstitutional statute, that suit will not be considered to be against the State and will not be barred by sovereign immunity. (*Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975.) It has also been held that a suit against a State officer alleging that he has abused his discretion or his authority will not be barred by sovereign immunity. *Joos v. Illinois National Guard* (1912), 257 Ill. 138, 100 N.E. 505; *Hanson v. Mosser* (1967), 247 Or. 1, 427 P.2d 97; 72 Am. Jur. 2d *States, Territories, & Dependencies* sec. 115 (1974).

In *Hanson* the plaintiffs, unsuccessful bidders for a State contract, had sought a declaratory judgment stating that the contract at issue was illegal and void because it had been awarded to a bidder other than the lowest bidder. They also sought to enjoin certain State officers from entering into the contract or paying out State funds under it. The State had successfully moved to quash service of summons on the ground of sovereign immunity. In reversing this order the Oregon Supreme Court acknowledged that under Oregon law the responsible State official had broad discretion in determining who was the lowest responsible bidder, but held that if, as alleged in the complaint, the official was shown to have abused his discretion by not awarding the contract to the lowest responsible bidder, then the official's acts would not be authorized by the State and the court would have jurisdiction to enjoin the awarding of the contract.

In *Joos* the plaintiff had obtained an injunction barring the Illinois National Guard and certain Guard officers from using a Guard camp for rifle practice. The plaintiff was an adjoining farmer who had established that the firing was in the direction of his home. In affirming the Illinois Supreme Court did not find sovereign immunity to be a

bar to the action despite a finding that the establishment of a rifle range and target shooting on that range were lawful exercises of the Guard's authority. The court held that by the manner in which this authority was exercised, endangering life and property, the officials had exceeded their authority and thus the suit was not actually against the State.

■ In this cause we have found that the appellant has the authority to investigate the accident at issue and to conduct testing in furtherance of that investigation. But the allegations of the appellees, if proven, are sufficient to establish that the appellant and its director have abused that authority by arbitrarily denying the appellees access to the material to be tested and information about the tests to be performed. Appellant has provided no reason for its total refusal to cooperate with appellees and intervenors even though the proposed destructive testing may impair the ability of these parties to fully prepare for their own civil cases arising out of that accident. We find that these allegations sufficiently set out a showing of arbitrary abuse of authority sufficient to vest the circuit court with the jurisdiction to enjoin any testing pending an evidentiary hearing on these allegations.

## II

■ Appellant also seeks to rely on the equitable principle that the courts should not ordinarily interfere with the exercise of discretion by public officials. However, where the official has acted arbitrarily and capriciously and has thus abused his discretion a court of equity may act to prevent such abuse. (*Rocke v. County of Cook* (1978), 60 Ill. App. 3d 874, 377 N.E.2d 287; *Mullen v. Board of School Directors* (1969), 436 Pa. 211, 259 A.2d 877; 42 Am. Jur. 2d *Injunctions* sec. 176 (1969).) Thus our finding of sufficient allegations of the arbitrary abuse of discretion by appellant and its director to vest the court with jurisdiction also establishes a basis for the exercise of its equitable powers to prevent that abuse.

## III

Finally appellant contends that there was an insufficient basis in the pleadings to warrant any preliminary injunctive relief. Whether the circuit court's order is considered to be a temporary restraining order issued with notice or preliminary injunction it amounts to the same type of relief and requires the same elements of proof. (See *Kable Printing Co. v. Mount Morris Bookbinders Union Local 65—B* (1976), 63 Ill. 2d 514, 349 N.E.2d 36.) The party seeking relief must

establish that it has a protectible right, that it will suffer irreparable injury if injunctive relief is not granted, that its remedy at law is inadequate, and that there is a likelihood that it will succeed on the merits. (*Allstate Amusement Co. of Illinois, Inc. v. Pasinato* (1981), 96 Ill. App. 3d 306, 421 N.E.2d 374.) In evaluating these factors we also note that the trial court has broad discretion to issue an injunction and its determination to do so will not be set aside absent a manifest abuse of that discretion. *Board of Education v. Peoria Education Association* (1975), 29 Ill. App. 3d 411, 330 N.E.2d 235.

■ It is undisputed that appellee Houseknecht and all intervenors except appellee Midwest are parties to civil actions arising out of the collapse of the aerial platform on which appellant proposed to perform destructive testing. Appellee Midwest is the owner of that platform and reasonably anticipates that it will become a party to one or more of those civil actions. In the context of a civil lawsuit our supreme court has recognized that destructive testing may be a proper part of discovery, but in so doing it also found that the court had a duty to protect the rights of the litigants to not have their presentation of the case unreasonably impaired by such testing. (*Sarver v. Barrett Ace Hardware, Inc.* (1976), 63 Ill. 2d 454, 349 N.E.2d 28.) We find that such a right must also be recognized where the destructive testing is to be performed by one who is not a party to the underlying civil actions. Thus we find that appellees and intervenors do have a protectible right subject to equitable protection.

The irreparable nature of the injury threatened here is evident from the fact that appellant admits it intends to perform testing which will destroy part of the platform and supporting rods. Despite the nature of this testing it is alleged that appellant even refuses to allow appellees or intervenors to observe this testing or to determine its exact nature.

It is clear that only injunctive relief can prevent this unmonitored destructive testing pending resolution of the issues; thus the remaining question concerns the likelihood of success on the merits. Appellant asserts that appellees cannot establish this likelihood because they have not alleged facts sufficient to entitle them to an injunction against the actions of the State. This contention we have already answered in our determination that the circuit court had the jurisdiction and the authority to order injunctive relief. Appellees were required only to establish that they would probably be entitled to the relief requested if the proof sustained their allegations. (*Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 387 N.E.2d 1300.) Our earlier findings on the issues of jurisdiction and the appropriateness of in-

junctive relief establish that appellees have met this burden.

Accordingly, for the reasons set forth in this opinion, the orders of the trial court are affirmed.

Affirmed.

JIGANTI and LINN, JJ., concur.