STANLEY JACOB *et al.*, Plaintiffs-Appellees, v. C AND M VIDEO, INC., *et al.*, Defendants-Appellants.

Fifth District   No. 5—92—0681

Opinion filed August 10, 1993.

Phillip H. Hamilton, of Farrell Law Firm, P.C., of Godfrey, for appellants.

David M. Duree, of O'Fallon, and Reinert, Duree & Crane, P.C., of St. Louis, Missouri (David M. Duree and Robert L. Carter, of counsel), for appellees.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

On August 25, 1992, the plaintiffs, franchisees of C & M Video, Inc. (C & M), filed suit alleging that C & M and Terry Monroe committed common law fraud, violated the disclosure provisions of the Franchise Disclosure Act of 1987 (815 ILCS 705/1 *et seq.* (West 1992)), and breached their franchise agreements.[1] Defendants filed a motion to dismiss on the basis that the arbitration provision in the franchise agreements requires the parties to submit to arbitration. C & M also filed a petition for temporary restraining order to enjoin the plaintiffs from violating the franchise agreements, from diverting any business of the C & M franchise, and from operating any similar business within a radius of 10 miles of any C & M store. The trial court denied both the motion to dismiss and the petition for injunctive relief. Defendants appeal.

■ The first issue on appeal is whether the trial court abused its discretion in denying defendants' request to compel arbitration. The plaintiffs submit that defendants have waived their right to compel arbitration because the defendants' motion to dismiss set forth plaintiffs' alleged failure to serve a notice of default upon C & M in accordance with the franchise agreements. Plaintiffs assert that the defendants, who lost that issue, cannot now complain that the trial court should have compelled arbitration of that and other issues. Plaintiffs cite *Cencula v. Keller* (1987), 152 Ill. App. 3d 754, 504 N.E.2d 997, in support of their argument. In *Cencula* a contractor brought an action against a homeowner for the amount allegedly due on a contract. The court denied the homeowner's motion to compel arbitration because the homeowner, by his answer, which alleged additional credits, and by his bill of particulars, which listed expense items, put into issue many facts which appeared to fall within the ambit of the contract's arbitration clause. *Cencula* held such conduct was so inconsistent with the right to arbitrate that it constituted a waiver of that right.

In this case, contrary to *Cencula*, defendants' motion to dismiss stated, at the outset, defendants' demand for arbitration. In an alternative prayer for relief, defendants requested the court to compel arbitration and to stay the litigation pending the completion of arbitration. In *Cencula* defendant submitted arbitrable issues to the trial

---

[1]The plaintiffs are four franchisees: Stanley Jacob, Lillian Jacob, and S L J Investment, Inc.; William and Darlene Chesterman; Nelda J. Webb; and Peter A. Frese, Jr., Jennifer Frese, and Tayco Entertainment, Inc.

court for determination and did not assert his demand for arbitration until 9½ months after the complaint was filed. In this case defendants asserted their claim for arbitration when they filed their initial pleading. It is well settled that arbitration is a favored method of settling disputes in Illinois and that waiver can occur only when a party's conduct is inconsistent with the arbitration clause. (*Burnett v. Safeco Insurance Co.* (1992), 227 Ill. App. 3d 167, 179, 590 N.E.2d 1032, 1041.) We cannot find that defendants, by filing their motion to dismiss, acted in a manner inconsistent with the arbitration clause.

Plaintiffs also argue that defendants have waived their right to seek arbitration because the defendants' petition for temporary restraining order exceeded the scope of subparagraph C of the arbitration clause and would arguably have subjected the plaintiffs to litigation for trademark infringement. Subparagraph C of the arbitration provision provides:

"Nothing herein contained shall bar the right of either party to seek and obtain temporary injunctive relief from a court of competent jurisdiction in accordance with applicable law against threatened conduct that will cause loss or damage, pending completion of the arbitration."

Defendants' petition for temporary restraining order sought to prohibit the plaintiffs from: (a) violating the terms of the franchise agreement; (b) diverting or attempting to divert business or customers of the plaintiffs' C & M franchised facilities to other competitive establishments; and (c) engaging in any similar business or operation within a 10-mile radius of their current locations. Defendants' petition also prayed for other and further relief as the court deemed equitable and just.

Evidence was presented at the hearing on the petition that the franchisees had removed the C & M signs from their stores but were continuing to operate video stores under different names at those locations. Defendants requested a temporary restraining order to enjoin the plaintiffs from continuing to violate the restrictive covenant of the franchise agreement.

Plaintiffs argue that C & M clearly exceeded subparagraph C because the injunctive relief sought was not temporary in nature and was not against threatened conduct but was against conduct that had already occurred. Plaintiffs further contend that the injunctive relief was not against conduct "pending completion of arbitration," in that the relief sought would have, according to defendants' own argument, subjected plaintiffs to litigation in Federal court for trademark infringement. Counsel for the defendants argued at the hearing for in-

junctive relief that he intended to seek redress in the Federal court for trademark infringement. Contrary to plaintiffs' assertion, however, defendants' counsel has at all times acted consistently with his belief that all issues should be submitted to arbitration. For instance, in his opening statement at the hearing, defendants' counsel stated that he expected the court to allow the defendants' request for temporary injunctive relief and that plaintiffs' complaint would later be dismissed due to the mandatory arbitration agreement.

■ Arbitration is a favored method of resolving disputes in Illinois, and a waiver of the right to arbitrate is disfavored. (*D.E. Wright Electric, Inc. v. Henry Ross Construction Co.* (1987), 183 Ill. App. 3d 46, 53, 538 N.E.2d 1182, 1187; *Cencula*, 152 Ill. App. 3d 754, 504 N.E.2d 997.) Waiver may occur, however, when a party acts in a manner inconsistent with the arbitration clause, thus indicating an abandonment of the right. (*Atkins v. Rustic Woods Partners* (1988), 171 Ill. App. 3d 373, 378, 525 N.E.2d 551, 555.) A party's conduct amounts to waiver when the party submits arbitrable issues to a court for decision. (*Kostakos v. K S N Joint Venture No. 1* (1986), 142 Ill. App. 3d 533, 536, 491 N.E.2d 1322, 1324.) In reviewing the record, we believe defendants' request for a temporary restraining order was merely responsive. (See *D.E. Wright Electric, Inc. v. Henry Ross Construction Co.* (1989), 183 Ill. App. 3d 46, 538 N.E.2d 1182; *Edward Electric Co. v. Automation, Inc.* (1987), 164 Ill. App. 3d 547, 518 N.E.2d 172.) The motion to dismiss had not been decided by the trial court, but the plaintiffs allegedly continued to engage in conduct which defendants felt compelled to enjoin. Under the circumstances, defendants' avenue for temporary injunctive relief was via the lawsuit initiated by the plaintiffs because the trial court already had jurisdiction over the case. We conclude that defendants did not waive their right to seek arbitration.

■ Plaintiffs also argue that the court properly denied defendants' request for arbitration because defendant Terry Monroe is not a party to the arbitration agreement, and to compel arbitration would resolve only those issues between the plaintiffs and one of the two defendants. An examination of the record shows that Terry Monroe, as president of C & M, signed five of the seven franchise agreements on behalf of C & M (one with Jacob, two with the Freses, two with the Chestermans). The remaining franchise agreements were signed on behalf of C & M by plaintiff Peter Frese as director of franchising (one with Jacob, one with Webb).

Plaintiffs contend that Monroe signed on behalf of C & M and as president of C & M, not in an individual capacity. Thus, plaintiffs ar-

gue, arbitration cannot be compelled by Terry Monroe. Defendants argue that because all parties are signatories to the franchise agreements, the trial court erred in failing to compel arbitration as to all the parties. We disagree with the defendants.

A nonparty to an arbitration agreement can neither compel arbitration nor be compelled to arbitrate. (*Vukusich v. Comprehensive Accounting Corp.* (1986), 150 Ill. App. 3d 634, 640, 501 N.E.2d 1332, 1336.) As pointed out in *Vukusich,* the status of a person or entity entitled to compel arbitration is determined from the language of the agreement giving rise to the arbitration. (*Vukusich,* 150 Ill. App. 3d at 642, 501 N.E.2d at 1337.) An examination of the franchise agreements reveals that Terry Monroe signed the instruments on behalf of C & M, in his representative capacity as president of the corporation. Contrary to plaintiffs' position, however, this does not mean that arbitration as to C & M is forestalled. Arbitration could, for instance, be compelled for all claims involving C & M, with claims involving Terry Monroe stayed until the completion of arbitration. See 710 ILCS 5/2 (West 1992); see also *Vukusich v. Comprehensive Accounting Corp.* (1986), 150 Ill. App. 3d 634, 501 N.E.2d 1332.

■ Plaintiffs next argue that the trial court did not err in denying defendants' request to compel arbitration because the arbitration clause is unenforceable in that it lacks mutuality. Plaintiffs cite *Hull v. Norcom, Inc.* (11th Cir. 1985), 750 F.2d 1547, for the proposition that an arbitration agreement is not mutually binding where one party reserves the option to raise and resolve the majority of disputes in a court rather than through arbitration. *Hull* held that a mutual agreement to arbitrate was effectively abrogated by provisions granting one party a unilateral right to a judicial forum in the event of a breach of the agreement. Plaintiffs complain that C & M reserved to itself the right to resolve its most significant disputes in the courts and required the franchisees to resort to arbitration.

We disagree with plaintiffs' argument. Plaintiffs overlook that subparagraph C of the arbitration provision at issue allows either party to seek temporary injunctive relief. Furthermore, while defendants have argued that they are not foregoing any right they might have to seek redress in the Federal court for trademark infringement in the event arbitration is not forthcoming, defendants assert, and we agree, that both parties under the terms of the franchise agreement agreed to submit disputes to arbitration. Nothing in the franchise agreement precludes either party from litigating issues in a court in the event arbitration is not invoked.

■ The next issue raised by the plaintiffs is that enforcement of the arbitration clause would be unconscionable because arbitration (1) would force the plaintiffs out of business and cause them to forfeit a substantial investment, and (2) would deny plaintiffs the protection of the Franchise Disclosure Act.

Without the benefit of a financial analysis of the parties' potential losses, or similar evidence in the record, we rely solely on the representations of the parties that they will incur losses pending the outcome of this litigation. The risk of loss is apparent for all parties in the context of litigation. Plaintiffs would have this court believe that if arbitration is required they will automatically forfeit any claim for damages against the defendants. While we express no opinion on plaintiffs' potential opportunity to recover such damages in the event damages are incurred, we are mindful of Illinois authority which allows for damages. See for instance Illinois law which allows for damages if the injunctive relief is improper (735 ILCS 5/11—110 (West 1992); *Hirschauer v. Chicago Sun-Times* (1989), 192 Ill. App. 3d 193, 548 N.E.2d 630) or where the doctrine of equitable recoupment is invoked (*Cox v. Doctor's Associates, Inc.* (1993), 245 Ill. App. 3d 186). We find, therefore, plaintiffs' argument that arbitration is unconscionable because of the risk of financial loss to be without merit.

In support of plaintiffs' argument that enforcement of the arbitration clause would deny them the protection of the Franchise Disclosure Act (815 ILCS 705/1 *et seq.* (West 1992)), plaintiffs cite two Illinois cases: *Barter Exchange, Inc. of Chicago v. Barter Exchange, Inc.* (1992), 238 Ill. App. 3d 187, 606 N.E.2d 186, and *State Farm Fire & Casualty Co. v. Yapejian* (1992), 152 Ill. 2d 533, 605 N.E.2d 539.

In *Barter Exchange*, the court ruled that a Texas corporation could not compel an Illinois corporation to arbitrate a franchise agreement executed in Illinois in Texas because to do so would deny the Illinois franchisee the protection of the Franchise Disclosure Act. The court further held that while the Franchise Disclosure Act permits arbitration in a forum outside of Illinois, the issue of whether the parties entered into an enforceable contract is not arbitrable because the question of whether a contract existed is an issue of law determinable only by a court. (*Barter Exchange*, 238 Ill. App. 3d at 194, 606 N.E.2d at 190.) At the outset we note that *Barter Exchange* is distinguishable because the choice-of-law provision in this franchise agreement provides for Illinois. As for the court's decision in *Barter Exchange* that the question of the existence of a contract is always for a court to decide, we disagree. The question of the existence of a contract is a question of contract application and interpretation for the

arbitrator, not the court, and the court should not deprive the party seeking arbitration of the arbitrator's skilled judgment by attempting to resolve the ambiguity. (*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 448, 530 N.E.2d 439, 445.) As set forth in *Cusamano v. Norrell Health Care, Inc.* (1992), 239 Ill. App. 3d 648, 654, 607 N.E.2d 246, 250, the arbitrator can provide the relief plaintiffs request, and if the arbitrator does not address a particular issue, plaintiffs can then file suit.

Plaintiffs cite *State Farm Fire & Casualty Co. v. Yapejian* (1992), 152 Ill. 2d 533, 605 N.E.2d 539, for the proposition that the arbitration clause should be interpreted narrowly so as not to require arbitration of the disputes at bar. Plaintiffs contend that *State Farm* supports their contention that the requirement to arbitrate all issues eviscerates enforcement of the Franchise Disclosure Act. *State Farm*, which dealt with issues involving uninsured motorist coverage, held that once coverage is established arbitration is limited to disputes concerning covered claims. The court noted that absent an explicit statement of legislative intent that the General Assembly intended to transfer responsibility for resolving all issues regarding uninsured motorist coverage away from the courts, it would interpret section 143a of the Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a), which required arbitration of "any dispute with respect to such coverage," narrowly. *State Farm*, 152 Ill. 2d at 543-44, 605 N.E.2d at 544.

*State Farm* did not dispel arbitration as a tool for resolving disputes. The decision merely reinforced the rule that the status of an issue as arbitrable is determined from the language of the agreement giving rise to the arbitration. (See *Vukusich v. Comprehensive Accounting Corp.* (1986), 150 Ill. App. 3d 634, 642, 501 N.E.2d 1332, 1337.) Plaintiffs' argument that the Franchise Disclosure Act is eviscerated if arbitration of disputes is required holds little weight given the fact that the Act itself recognizes arbitration as a tool in resolving franchise disputes (see 815 ILCS 705/4 (West 1992)). We do not agree with plaintiffs' argument that it would be unconscionable to enforce the arbitration clause.

■ The next issue on appeal is whether the court abused its discretion in denying defendants' motion to dismiss, thereby refusing to abide by the arbitration clause in the franchise agreements. Each of the parties' franchise agreements contains the following provision:

"*ARBITRATION*

A. Except as specifically otherwise provided in this Agreement, the parties agree that any and all disputes between them, and any claim by either party that cannot be amicably

settled, shall be determined solely and exclusively by arbitration in accordance with the rules of the American Arbitration Association or any successor thereof. Arbitration shall take place at an appointed time and place in Effingham County, Illinois.

B. Each party shall select one arbitrator (who shall not be counsel for the party), and the two so designated shall select a third arbitrator. *** Judgment upon any award of the majority arbitration shall be binding and shall be entered in a court of competent jurisdiction. The award of the arbitrators may grant any relief which might be granted by a court of general jurisdiction, including, without limitation, by reason of enumeration, award of damages and/or arbitrators['] and reasonable attorney's fees, against either or both parties, in such proportions as the arbitrators shall determine.

C. Nothing herein contained shall bar the right of either party to seek and obtain temporary injunctive relief from a court of competent jurisdiction in accordance with applicable law against threatened conduct that will cause loss or damage, pending completion of the arbitration.

D. It is the intent of the parties that any arbitration between FRANCHISOR and FRANCHISEE shall be of FRANCHISEE'S individual claim and that the claim subject to arbitration shall not be arbitrated on a classwide basis."

For reasons which are not apparent from the trial court's order, defendants' motion to dismiss was denied. Defendants contend that not only do the contracts require that all claims between the parties be submitted to arbitration but sections 1 and 2 of the Uniform Arbitration Act (710 ILCS 5/1, 2 (West 1992)) also support such a position. For the reasons discussed herein, we agree that the trial court abused its discretion in denying defendants' motion to dismiss. We further find that the court abused its discretion in not ordering that the claims between the plaintiffs and C & M be submitted to arbitration. As we have already determined in this opinion, Terry Monroe, in his individual capacity, is not a party to the franchise agreements, and therefore, we remand for a determination of whether the claims involving Terry Monroe should be severed from those involving C & M, stayed pending arbitration of the claims between plaintiffs and C & M, or dealt with in another manner as determined by the trial court.

Arbitration is a favored method of settling disputes. (*D.E. Wright Electric, Inc. v. Henry Ross Construction Co.* (1989), 183 Ill. App. 3d 46, 53, 538 N.E.2d 1182, 1187.) According to the Uniform Arbitration

Act, if the language of the arbitration agreement is clear and if it is obvious that the dispute desired to be arbitrated falls within the scope of the arbitration clause, the court should decide the arbitration issue and compel arbitration. (*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 445, 530 N.E.2d 439, 443.) In determining the scope of the arbitration clause, the court examines both the wording of the clause and the terms of the contract. (*Atkins v. Rustic Woods Partners* (1988), 171 Ill. App. 3d 373, 378, 525 N.E.2d 551, 555.) In this case the plaintiffs do not dispute the literal meaning of the language of the franchise agreements that the parties agree that any and all disputes between them "shall be determined solely and exclusively by arbitration." We have already addressed the specific arguments the plaintiffs have posed with regard to the arbitration clause, and we cannot find that the arbitration clause should not be enforced as to the issues raised in plaintiffs' complaint against C & M.

An additional argument which has been posited on appeal is that the potential severance of the claims against Terry Monroe from the claims against C & M would thwart judicial economy and the best course would be to try all claims in a court. In the instant case we cannot find that the policy of judicial economy should outweigh the policy of favoring arbitration. Generally, an agreement to arbitrate is enforced despite the existence of claims by third parties or of pending multiparty litigation. *Atkins v. Rustic Woods Partners* (1988), 171 Ill. App. 3d 373, 380, 525 N.E.2d 551, 556; *M.D. Building Material Co. v. 910 Construction Venture* (1991), 219 Ill. App. 3d 509, 519, 579 N.E.2d 1059, 1065.

■ The last issue for our consideration is whether the trial court erred in refusing C & M's request for injunctive relief. In its petition for temporary restraining order with notice and other injunctive relief, C & M requested an order enjoining, prohibiting, and restraining the plaintiffs from the following:

(a) violating the terms of the individual franchise agreements;
(b) diverting or attempting to divert business or customers of any C & M franchised facility to any competitive establishment; and (c) participating in the operation of any similar business within a radius of 10 miles of any existing franchised facility.

Notice was given of the hearing on the petition for injunctive relief, a hearing was held, and the trial court denied defendant's request for relief.

As a preliminary matter, a question is raised in the briefs as to what standard of review we should apply because there is some ques-

tion as to whether the trial court treated the defendant's petition as one for a temporary restraining order or one for a preliminary injunction. A temporary restraining order issued with notice and a preliminary injunction issued with notice are the same type of relief and, whether referred to under either term, require the same elements of proof. (*Kable Printing Co. v. Mount Morris Bookbinders Union Local 65—B* (1976), 63 Ill. 2d 514, 524, 349 N.E.2d 36, 40; *Houseknecht v. Zagel* (1983), 112 Ill. App. 3d 284, 291, 445 N.E.2d 402, 407.) The party seeking a preliminary injunction or temporary restraining order must establish that it has a protectable right, that it will suffer irreparable harm if injunctive relief is not granted, that its remedy at law is inadequate, and that there is a likelihood of success on the merits. (*Houseknecht v. Zagel* (1983), 112 Ill. App. 3d 284, 291-92, 445 N.E.2d 402, 407.) The party seeking relief is not required to make out a case which would entitle him to relief on the merits; rather, he need only show that he raises a "fair question" about the existence of his right and that the court should preserve the status quo until the case can be decided on the merits. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 382, 483 N.E.2d 1271, 1275.) In evaluating these factors, we are mindful that the scope of review in an interlocutory appeal is normally limited to determining whether the trial court abused its discretion in granting or refusing the requested interlocutory relief. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1991), 213 Ill. App. 3d 591, 594, 572 N.E.2d 1119, 1122; *Best Coinop, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 458 N.E.2d 998.)

> " 'A preliminary injunction is issued to preserve the *status quo* until the trial court may consider the merits of the case. In ruling on a motion for such relief, controverted facts or the merits of the case *are not decided*. In reviewing the discretion exercised by the trial court, an appellate court may decide only whether the petitioner has demonstrated a *prima facie* case that there is a fair question as to the existence of the rights claimed; that the circumstances lead to a reasonable belief that they probably will be entitled to the relief sought, if the evidence sustains the allegations of the petition; and that matters should be kept in *status quo* until the case can be decided on its merits. In sum, the only question before us is whether there was a sufficient showing to sustain the order of the trial court.' " (Emphasis in original.) *Dixon Association for Retarded Citizens v. Thompson* (1982), 91 Ill. 2d 518, 524-25, 440 N.E.2d 117, quoting *City of Chicago v. Airline Canteen Ser-*

*vice, Inc.* (1978), 64 Ill. App. 3d 417, 432-33, 380 N.E.2d 1106, 1118.

At the hearing on the petition for injunctive relief, Hershal Monroe, president of C & M, testified that, with the exception of the Chestermans' franchise, which is in the process of being terminated, all but one of the franchisees in this case have either been terminated or have not been renewed. Monroe testified that each of the franchisees ceased paying royalty and advertising fees, even though the seven stores they operate have total gross revenues of approximately $17,900 per week. He testified that the franchisees have removed their C & M signs from their businesses and no longer operate under the name C & M Video. They do, however, continue to operate video rental businesses from the same locations, which is allegedly in violation of the franchise agreements. Monroe testified: "This will destroy the whole system. There is no reason to have a franchising system if this happens." He testified that the actions of the plaintiffs will damage C & M's goodwill and foster the potential problem of recruiting new franchisees into the system. Counsel for C & M argued that irreparable injury will occur in the form of destruction of the statewide franchise which consists of approximately 28 stores including the plaintiffs' stores. Counsel argued that if injunctive relief is not granted the entire C & M franchise will be destroyed and no amount of damages can compensate for that loss.

While Monroe testified that employee morale was low and that irreparable injury to the franchise system was inevitable, there was no showing that the perceived threat of irreparable harm, if realized, would not be compensable at law. From a review of the record, we cannot say that the trial court abused its discretion in denying the request for preliminary injunctive relief.

We conclude the trial court erred in denying the motion to dismiss with respect to C & M. Since the arbitration clause covers the dispute between plaintiffs and C & M, the motion to dismiss should have been allowed in favor of C & M, and we remand for that purpose. We also reverse the trial court's refusal to order arbitration as between plaintiffs and C & M and remand for an order compelling arbitration between them. We also remand for a determination of the status of the claims between plaintiffs and Terry Monroe. We affirm the trial court's denial of C & M's request for preliminary injunctive relief.

Affirmed in part; reversed in part and remanded.

MAAG and WELCH, JJ., concur.