SIXTH DIVISION
May 18, 2007

No. 1-06-2115



In re ESTATE OF MARY ANN WILSON, a )      Appeal from the
Disabled Person                    )      Circuit Court
                                   )      of Cook County.
                                   )
(Arnetta Williams, Guardian of the )
Estate of Mary Ann Wilson          )
                                   )
     Petitioner-Appellee,          )      No. 06 P 3549
                                   )
     v.                            )
                                   )
Karen A. Bailey,                   )      The Honorable
                                   )      Maureen E. Connors,
     Respondent-Appellant).        )      Judge Presiding.


     JUSTICE O'MALLEY delivered the opinion of the court:

     Petitioner Arnetta Williams petitioned the circuit court of

Cook County to appoint her temporary guardian of her cousin, Mary

Ann Wilson.  The circuit court granted her motion and named her

temporary guardian of Wilson and her estate.  Respondent Karen

Bailey filed a preliminary injunction seeking to enjoin

petitioner from exercising any authority pursuant to the circuit

court's grant of temporary guardianship.  The circuit court

denied respondent's motion for a preliminary injunction and

respondent appealed, claiming that the circuit court lacked

subject matter jurisdiction for failure to meet the requirements

of section 2-10 of the Illinois Power of Attorney Act (the Power

1-06-2115

of Attorney Act) (755 ILCS 45/2-10 (West 2004)) and section 11a-18(e) of the Probate Act of 1975 (the Probate Act) (755 ILCS 5/11a-18(e) (West 2004)). For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

Mary Ann Wilson was born on April 16, 1920, and lived at 10963 South Sangamon Street in Chicago, Illinois, on May 3, 2006. On that same day, Wilson was discovered in her home "totally abandoned, in feces, confused, [unable] to walk or talk, and had lost a lot of weight." Protective services were called and Wilson was admitted to St. Elizabeth Hospital, where a psychiatric evaluation revealed that she was "oriented only to name, [unable] to give her medical history, [and had] impaired concentration." On May 12, 2006, Isaac Heard, Sr., Wilson's brother from North Carolina, filed petitions seeking the appointment of Arnetta Williams, Wilson's cousin, as guardian for Wilson and one seeking to appoint Williams as temporary guardian.[1] The circuit court appointed Sandra Thiel as guardian ad litem (GAL) for Wilson and directed her to furnish the court with a written report on May 15, 2006, when it would rule on the petition for temporary guardianship pursuant to section 11a-4 of

_____

[1]The record shows that Heard withdrew his petition after initiating the action in the circuit court from North Carolina and Williams ultimately became the petitioner in this case.

2

the Probate Act.

On May 15, 2006, the GAL filed her written report relative to her meeting with Wilson and appeared before the court for a hearing, where Williams was also present. The GAL presented serious concerns to the circuit court regarding Wilson's physical and financial condition. The GAL also discovered that Karen A. Bailey was Wilson's agent under several powers of attorney for her property, real estate and healthcare issued in January 2004. Williams and the GAL presented information to the court that bank accounts containing over $180,000 had been withdrawn by Bailey pursuant to her authority under the power of attorney. Due to the deplorable circumstances under which Wilson was discovered, as well as her health and mental issues, the GAL strongly urged the circuit court to temporarily suspend the powers of attorney granted to Bailey.

Based on the preliminary information and the GAL's recommendation, the circuit court temporarily suspended Bailey's authority under the powers of attorney naming her Wilson's agent and appointed Williams as temporary guardian until a hearing on the petition for plenary guardianship could be heard. The court directed Williams through the order appointing her temporary guardian to: (1) arrange for routine medical care; (2) place Wilson in the South Shore Nursing and Rehabilitation Center; (3)

investigate funds and mail belonging to Wilson; (4) investigate the powers of attorney; and (5) have access to all of Wilson's medical records.

On June 7, 2006, Bailey filed an emergency motion to vacate the circuit court's order appointing Williams as temporary guardian and Sandra Thiel as GAL; issue a temporary restraining order (TRO) against Williams and the GAL from any further action concerning Wilson; and "issue a mandatory injunction for Arnetta Williams to reveal the whereabouts of $200,000 and account for the same."  On June 8, the circuit court heard arguments in a hearing on Bailey's emergency motion.  During the hearing, David Service, Wilson's stepson and Bailey's husband, appeared on June 8, 2006, and filed a petition for guardianship which he withdrew, leaving Bailey as the only party seeking vacation of the circuit court's May 15 order.  The following colloquy occurred relative to what Williams had learned since the May 15, 2006 order had been issued:

"MS. WILLIAMS: I discovered some very disturbing things.

THE COURT: For Example?

A. For example, Ms. Wilson had a USB account that had approximately $187,000 in it,

Q. Okay.

A. That had been withdrawn by Karen Bailey.

4

Q. Do you know when?

A. Yes August [2005] it was $25,400.

Q. Say again?

A. $25,400 was the initial withdrawal. That was into Credit Union One, credit union, and I believe that's Ms. Bailey's personal credit union.

Q. So that was $25,000 of the $187[,000]?

A. Yes and then the balance of that was withdrawn in November '05 last year.

Q. Do you know what happened to the proceeds?

A. That money was deposited into Mary Wilson's account at LaSalle Bank. Since that time the money has been pretty much withdrawn. That account has been as high as a hundred and - - well, I don't know.

Q. Okay.

A. And that's gone. It's down to about $3,000 now.

Q. Three thousand?

A. Yes, it's about according [sic] to my preliminary calculations.

Q. Okay. So Mr. Brady [sic], what brings you to court today, sir?

MR. BRADEN [Attorney for Respondent Bailey]: The whole purpose of this motion, I'm sure you read it, is to vacate

5

all orders here. The reason is, our position is that the provisions of the statute has not been followed here, that Karen Bailey has the power of attorney. ***

And it's my understanding from reading the statute that when there's a power of attorney that the Court does not have jurisdiction to proceed on entering guardianship orders and also unless the Court proceeds in accordance with the provisions in the Power of Attorney Act, under that section of the relationship of the agent and the Court that a separate hearing be conducted to determine whether the agent had acted in the best interest of the ward, and that has not been done. In addition, Karen Bailey has not been notified of any of these proceedings and it's my understanding that she should have been. She should have been notified."

Q. Did I strike - -

MR. BRADEN: This was her first time.

THE COURT: Did I suspend the powers of the POA?

MS. WILLIAMS: Yes because it's suspicious.

MR. BRADEN: Today she's been served and she is aware of everything that has happened, and that's my point, judge, that's my point.

THE COURT: Well, counsel, let me ask you. Can I get our [sic] client under oath and have her answer questions as to

what happened to the all this money? Can we get that done?

MR. BRADEN: Look, Judge, if we had a hearing, if we had a hearing - -

THE COURT: I would like to know now because I'm concerned. These are serious allegations.

MR. BRADEN: She was acting in accordance with her power of attorney to do that, and if you want to put her under oath, of course, she filed a verified petition, but she's prepared to - -.

THE COURT: It doesn't go into the particulars of the assets, though.

* * *

THE COURT: When did you first start acting as Power of Attorney for property, taking care of the assets of Mary Wilson?

KAREN BAILEY: January of 2004. Maybe it was February, I'm not sure.

Q. What was the value of her estate at that time, total value?

A. Probably - - I'm not sure, total value may be two hundred and something, I'm not sure.

Q. Well, you were the power of attorney. What was the value on the date you took over? You don't know?

7

1-06-2115

A. No, Your Honor.

Q. Any idea?

A. 250,000, I'm not sure.

* * *

Q. Let's go on to something else.  Was there money withdrawn from her account, this USB one?

A. Yes, it was.

Q. What happened to the $25,400?

A.  I withdrew it because under her, her and her husband, he told me to withdraw.

Q. He?

A. It's both of their account.  When he got married, he stated to us that he helped her with that money.

Q. Wait.  The account had her name on it?

A. Exactly, her and him.

Q. So it's her assets.  And you're her power of attorney and you're taking orders from him?

A. Her husband.  Her and him stated to me that they wanted it out of the bank.  I can only go by what they was telling me.

Q. Well, no, you're supposed to be talking to your principal who is she, not he.

* * *

8

Q. So you withdrew how much?

A. It was 25 first because they sent a letter, a thing saying that she could get 25 or whatever. She said she wanted her money.

Q. So what happened?

A. I put it in a box.

* * *

Q. I'm just trying to get a picture. What happened? You took $25,000 cash. And it was in what kind of box?

A. It was a lock box from a safe-deposit."

Bailey further testified under oath that she eventually withdrew over $150,000 in cash from the USB account and added it to an additional $50,000 in cash in a box that was stored in Wilson's closet. Bailey also testified that she and her husband, Wilson's stepson, paid for an addition to her house with Wilson's money so that Wilson and her husband could live with her and her husband. Bailey produced no receipts for the addition to her house and testified that the contractors only accepted cash payment. Over $200,000 in cash that was stored in Wilson's closet in a box disappeared. Williams submitted cancelled checks to the court drawn on Wilson's account and made payable to and endorsed by Bailey, totaling over $100,000. At the conclusion of the proceedings on June 8, 2006, the circuit court denied

Bailey's motion for temporary restraining order and ordered her to file an accounting by June 27, 2006.

On June 27, 2006, Bailey failed to file an accounting. Instead, she filed a motion to amend her previous emergency motions citing "a revelation of additional law and facts that are relevant in assisting the court in rendering a just and correct ruling on the motion." The court heard arguments on June 29, 2006, on Bailey's amended emergency motion. Bailey filed a supplemental amended motion to vacate the May 15, 2006 order on June 30, 2006. On July 5, 2006, the circuit court denied Bailey's amended and supplemental motions. Bailey timely appealed the circuit court's denial of her motions for a TRO and preliminary injunction pursuant to Illinois Supreme Court Rule 307(a) (188 Ill. 2d R. 307(a)).

ANALYSIS

I. SUBJECT MATTER JURISDICTION

Bailey raises only one issue before this court, to wit, subject matter jurisdiction of the circuit court in the instant case. Bailey specifically argues that the circuit court acted beyond its power by temporarily suspending Bailey's power of attorney and appointing Williams temporary guardian of Wilson and the court failed to comply with section 11a-18(e) of the Probate Act, which confers jurisdiction on the circuit court to hear the

10

matter brought by Williams. We disagree and find that this case raises a question of Illinois subject matter jurisdiction jurisprudence that merits revisiting Illinois law on the issue.

Bailey cites to In re Hatsuye T., 293 Ill. App. 3d 1046 (1997), for the proposition that the circuit court's failure to comply with the requirements of various sections the Probate Act and the Power of Attorney Act deprives the circuit court of subject matter jurisdiction. Bailey characterizes the requirements of article 11a of the Probate Act and section 2-10 of the Power of Attorney Act, based on In re Hatsuye T., as conditions precedent to a court's exercise of jurisdiction. In re Hatsuye T., 293 Ill. App. 3d at 1053. The issue concerning the authority of a circuit court to properly exercise subject matter jurisdiction has been explained in detail by our supreme court in Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325 (2002), and in our view, conflicts with our decision in In re Hatsuye T., 293 Ill. App. 3d at 1053.

In Belleville Toyota, our supreme court's intent was to clarify the question of subject matter jurisdiction as it relates to article VI, §9, of the Illinois Constitution (Ill. Const. 1970, art. VI, §9)) which has been the source of significant confusion for courts and litigants. Belleville Toyota, 199 Ill. 2d at 338. In Belleville Toyota, our supreme court acknowledged

11

1-06-2115

that certain cases, including Illinois Supreme Court cases, had apparently misapplied article VI, section 9 in determining whether the circuit court had properly exercised subject matter jurisdiction in a particular case.  Belleville Toyota, 199 Ill. 2d at 337-38.

The court in Belleville Toyota, after a lengthy discussion of the 1964 amendments to the Illinois Constitution that changed article VI, section 9, stated that " 'subject matter jurisdiction' refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs.  People v. Western Tire Auto Stores, Inc., 32 Ill. 2d 527, 530 (1965); Van Dam v. Van Dam, 21 Ill. 2d 212, 216 (1961);  14 Ill. L. & Prac. Courts §16, at 183 (1968); Faris v. Faris, 35 Ill. 2d 305, 309 (1966);  Restatement (Second) of Judgments §11 (1982).  With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution.  Ill. Const. 1970, art. VI, §9; In re Lawrence M., 172 Ill. 2d 523, 529 (1996); In re M.M., 156 Ill. 2d 53, 65 (1993)."  Belleville Toyota, 199 Ill. 2d at 334.

"Under section 9 of article VI, *** jurisdiction extends to all 'justiciable matters.'  Ill. Const. 1970, art. VI, §9.  Thus,

12

1-06-2115

in order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter." Belleville Toyota, 199 Ill. 2d at 334. See also In re Antwan L., 368 Ill. App. 3d 1119, 1128 (2006). Although not defined by the constitution, section 9 of article VI confers subject matter jurisdiction over all "justiciable matters," which the Belleville Toyota court referred to as "controvers[ies] appropriate for review by the court, in that [they are] definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." Belleville Toyota, 199 Ill. 2d at 335; see also In re Antwan L., 368 Ill. App. 3d at 1128.

Following the amendments to our constitution, which became effective in 1964, the legislature's role was significantly limited relative to defining the jurisdiction of the circuit court. Belleville Toyota, 199 Ill. 2d at 336. Effective January 1, 1964, an amendment to article VI replaced limited jurisdiction: "Circuit Court[s] shall have unlimited original jurisdiction of all justiciable matters." Ill. Const. 1870, art. VI, §9 (amended 1964); accord Ill. Const. 1970, art. VI, §9 ("Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original

13

and exclusive jurisdiction").  Prior to the 1964 amendments, the Illinois Constitution provided: "The circuit courts shall have original jurisdiction of all causes in law and equity, and such appellate jurisdiction as is or may be provided by law, ***."  Ill. Const. 1870, art. VI, §12.  The 1964 amendment created a single integrated trial court vested with jurisdiction to adjudicate all controversies.  Zamarron v. Pucinski, 282 Ill. App. 3d 354, 360 (1996).

This limited role, as described by the Belleville Toyota court, now stands in "stark contrast to the significant role previously exercised by the legislature under our former constitution. See [In re Estate of] Mears, 110 Ill. App. 3d [1133], 1134-38 [(1982)] (tracing the development of jurisdiction from a purely legislative concept embodied in the 1818 constitution, to the concept now in force under the 1970 constitution)."  Belleville Toyota, 119 Ill. 2d at 336.  As the Belleville Toyota court noted, "[u]nder our former constitution, adopted in 1870, the circuit court enjoyed 'original jurisdiction of all causes in law and equity.'  Ill. Const. 1870, art. VI, §12."  Belleville Toyota 199 Ill. 2d at 336.  Historically speaking, "[t]he [circuit] court's jurisdiction over special statutory proceedings, [such as] matters which had no roots at common law or in equity, derived from the legislature.  See

14

People v. Graw, 363 Ill. 205, 208 (1936) (circuit court's constitutionally derived jurisdiction did not apply to special statutory proceedings); Selden v. Illinois Trust & Savings Bank, 239 Ill. 67, 74 (1909) (court of general jurisdiction may have a special statutory jurisdiction conferred upon it). Thus, in cases involving purely statutory causes of action, our supreme court, in pre-1964 cases held that unless the statutory requirements were satisfied, a court lacked jurisdiction to grant the relief requested. See e.g. Martin v. Schillo, 389 Ill. 607, 609-10 (1945); People ex rel. Kilduff v. Brewer, 328 Ill. 472, 479-84 (1927); Sharp v. Sharp, 213 Ill. 332, 334-36 (1904)." Belleville Toyota, 199 Ill. 2d at 336;

In 1964, however, amendments to the judicial article of the 1870 constitution became effective. These amendments radically changed the legislature's role in determining the subject matter jurisdiction of the circuit court. Belleville Toyota, 199 Ill. 2d at 337, citing: In re M.M., 156 Ill. 2d 53, 74 (1993) (Miller, C.J., concurring, joined by Bilandic, J.) (the sources and scope of the circuit court's jurisdiction changed "dramatically" with the 1964 amendments to the judicial article); Mears, 110 Ill. App. 3d at 1137 (a "revolution" was wrought by the 1964 amendments to the juridical article); Ill. Const. 1870, art. VI, §9 (amended 1964). Our supreme court has clearly indicated that,

15

1-06-2115

as a result of the 1964 amendments, "the legislature's power to define the circuit court's jurisdiction was expressly limited to the area of administrative review. The current Illinois constitution, adopted in 1970, retained this limitation. Ill. Const. 1970, art. VI, §9." Belleville Toyota, 199 Ill. 2d at 337.

In light of the 1964 amendments, the precedential value of case law which examined a court's jurisdiction according to the pre-1964 judicial system is necessarily limited to the constitutional context in which those cases arose. Belleville Toyota, 199 Ill. 2d at 337, citing: In re M.M., 156 Ill. 2d at 74 (Miller, C.J., concurring, joined by Bilandic, J.) ("terminology employed in earlier [pre-1964] decisions must be viewed in the constitutional context in which those cases were decided"); People v. Valdez, 79 Ill. 2d 74, 84-85 (1980) (rationale of cases decided under 1870 constitution not applicable in determining whether circuit court had jurisdiction under 1970 constitution). Nonetheless, citation to pre-1964 rules of law governing subject matter jurisdiction continues even though the Belleville court held that those cases "continue to be cited by Illinois courts, without qualification, creating confusion and imprecision in the case law." Belleville 199 Ill. 2d at 338.

In our view, pre-1964 jurisdictional jurisprudence was the

16

basis for this court's holding in <u>In re Hatsuye T.</u>, where we held that a circuit court's order was void for want of subject matter jurisdiction when it failed to make the requisite findings enumerated in section 2-10 of the Power of attorney Act and article 11a of the Probate Act. <u>In re Hatsuye T.</u>, 293 Ill. App. 3d at 1053. This court's ruling in <u>In re Hatsuye T.</u>, however, was handed down without the benefit of <u>Belleville Toyota</u> and follows authority that was applicable and authoritative under the 1870 Constitution, not the post-1964 amendments to the 1870 constitution or the 1970 constitution. <u>Belleville Toyota</u> specifically addressed the argument Bailey raises here and rejected it, stating:

> "A rule of law may have been appropriate under the pre-1964 judicial system when the court's jurisdiction to hear and determine purely statutory causes of action was conferred and limited by the legislature, and the failure to conform strictly to the statutory requirements prevented the court from acquiring subject matter jurisdiction. To the extent that this proposition has any relevance today, it is confined to the area of administrative review -- the only area in which the legislature still determines the extent of the circuit court's jurisdiction." <u>Belleville Toyota</u>, 199 Ill. 2d at 338.

17

1-06-2115

Article VI of our constitution and <u>Belleville Toyota</u> are clear that, except in the area of administrative review, the jurisdiction of the circuit court flows from the constitution. Ill. Const. 1970, art. VI, §9; <u>Belleville Toyota</u>, 199 Ill. 2d at 335 (holding that the General Assembly has no power to enact legislation that would contravene article VI). See also <u>Tully v. Edgar</u>, 171 Ill. 2d 297, 308 (1996). Most importantly though, Williams presented a "justiciable matter" to the circuit court in her complaint that was definite and concrete, and not hypothetical or moot, touching upon the legal relations of parties having adverse legal interests. Consequently, we refuse to extend <u>In re Hatsuye T.</u> to the instant matter in light of the supreme court's clarification of the scope of circuit court's exercise of subject matter jurisdiction in Illinois.

II. CIRCUIT COURT'S DENIAL OF BAILEY'S MOTIONS

Although subject matter jurisdiction is derived from the constitution and not the Probate Act or Power of Attorney Act in this case, this is not to say that the circuit court may act in derogation of statutes enacted by the legislature. <u>In re M.M.</u>, 156 Ill. 2d at 65 (rejecting such logic as unsound). That being said, the only issue here that Bailey could properly raise, but did not, is whether the circuit court correctly denied her motions for a TRO and preliminary injunction.

18

"A temporary restraining order issued with notice and a preliminary injunction issued with notice are the same type of relief and, whether referred to under either term, require the same elements of proof." Jacob v. C&M Video Inc., 248 Ill. App. 3d 654, 664 (1993), citing Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B, 63 Ill. 2d 514, 524 (1976); Houseknecht v. Zagel, 112 Ill. App. 3d 284, 291 (1983). "The party seeking a preliminary injunction or temporary restraining order must establish that it has a protectible right, that it will suffer irreparable harm if injunctive relief is not granted, that its remedy at law is inadequate, and that there is a likelihood of success on the merits." Jacob, 248 Ill. App. 3d at 664; City of Waukegan v. Illinois Environmental Protection Agency, 339 Ill. App. 3d 963, 922 (2003). The party seeking relief is not required to make out a case which would entitle him to relief on the merits; rather, he need only show that he raises a "fair question" about the existence of his right and that the court should preserve the status quo until the case can be decided on the merits. Jacob, 248 Ill. App. 3d at 664, citing Buzz Barton & Associates, Inc. v. Giannone, 108 Ill. 2d 373, 382 (1985). In evaluating these factors, we are mindful that the scope of review in an interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a) (188 Ill. 2d R. 307(a)) is normally

19

1-06-2115

limited to determining whether the trial court abused its discretion in granting or refusing the requested interlocutory relief. Jacob, 248 Ill. App. 3d at 664, citing Zurich Insurance Co. v. Raymark Industries, Inc., 213 Ill. App. 3d 591, 594 (1991).

Here, however, Bailey does not argue that the circuit court's denial of her motions for a TRO and preliminary injunction were an abuse of discretion. Bailey does not contend that she has a protectible right, that she will suffer irreparable harm if injunctive relief is not granted, that her remedy at law is inadequate, or that there is a likelihood of success on the merits. She only argues that the circuit court was without jurisdiction to suspend the powers of attorney and appoint a temporary guardian and GAL, an issue that is separate and distinct from the denial of Bailey's motion for a TRO and preliminary injunction. As a result, Bailey has failed to convince this court that she was entitled to the relief sought in the circuit court or that the circuit court erred in denying such relief. Furthermore, the record reveals that when the circuit court pressed Bailey for the irreparable harm that would occur if the relief she sought were not granted, Bailey could only reference the money that was missing. We agree with the circuit court's ruling that granting Bailey's motions would not bring the

money back and that the "irreparable harm" with respect to the missing funds had already occurred. Moreover, based on the evidence in the record and Wilson's condition when discovered, there does not appear to be a likelihood that Bailey would be successful in her efforts to have the powers of attorney reinstated because the status quo, as it related to Wilson prior to the circuit court's intervention, was plainly appalling.

### III. CONCLUSION

For the foregoing reasons, we find that the circuit court properly exercised subject matter jurisdiction because Williams brought a justiciable matter before the circuit court by initiating an action under the Probate and Power of Attorney Acts after finding her family member in deplorable conditions. We further hold that the circuit court correctly denied Bailey's motions for a TRO and preliminary injunction based on the record because she did not and could not articulate the required elements for such relief. Accordingly, we affirm the judgment of the circuit court.

Affirmed.

FITZGERALD SMITH, P.J., and McNULTY, J., concur.