JERRY GOSHEY, Plaintiff-Appellee, *v.* ARTHUR DUNLAP *et al.*, Defendants-Appellants.

(No. 57305; ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

First District (3rd Division)—December 6, 1973.

Edward V. Hanrahan, State's Attorney, of Chicago (Vincent Bentivenga, Jr. and Henry Hauser, Assistant State's Attorneys, of counsel), for appellants.

Sandman and Levy, Bernard Mortz, and Eugene Lieberman, all of Chicago, for appellee.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

The plaintiff, Jerry Goshey, filed a complaint for personal injuries received in an altercation with the defendant, Arthur Dunlap, which took place at the Cook County Hospital, where Dunlap was employed as a security guard. The County of Cook was also joined as a defendant. A jury returned a verdict in favor of the plaintiff and against both defendants with damages assessed at $9,000.

At 2:00 P.M. on May 5, 1967, the plaintiff, a taxicab driver, went to the Cook County Hospital to pick up a woman and her baby who were being discharged. Upon entering the hospital he obtained a pass from the information center and proceeded to the maternity ward on the fifth floor. The woman was not ready to leave and a nurse told him to give her his admission pass and the clothes he had brought for the woman and baby, and to return at 4:00 P.M.

When he returned at 4:00 P.M. he went directly to the elevator which would take him to the maternity ward. Before he entered it Dunlap approached him, grabbed him by the shoulder and asked him where he was going. Goshey, who was wearing his uniform, explained that he was a cab driver, that he had previously come to the hospital to pick up a fare and that a nurse had told him to return at 4:00 P.M. According to Goshey, Dunlap stated he wasn't a cab driver and that he wasn't going to pick up anyone. Dunlap took Goshey by the collar and drew back his fist; Goshey grabbed Dunlap's fist and told him, "You don't have to do this to me." Dunlap retorted, "I do more than that." Two other guards appeared; they seized Goshey and pulled him back; he released Dunlap's fist and Dunlap struck him on the jaw. Goshey was then handcuffed, and the guards took him into a room where his explanation for his presence in the hospital was verified. The handcuffs were removed and he was released. His jaw had been injured by the hard blow he received and he was in great pain. The jaw was x-rayed at the hospital and was wired together. Subsequently, extensive dental work was performed including the extraction of several of his teeth.

Dunlap's version of the altercation differed markedly from that given by Goshey. He saw Goshey in the hospital at about 4:20 P.M., and asked him whether he had a pass. Goshey stated he didn't need one, that he was going to the maternity ward. Dunlap explained that it was necessary to have a pass before he could do so. Goshey told Dunlap to get out of his way and that he wasn't going to get a pass. Dunlap took

Goshey lightly by the arm and attempted to walk him to the front of the hospital where he could obtain a pass. Goshey broke away, took hold of Dunlap's sweater, and struck him several times upon the face. Then Dunlap struck Goshey and knocked him down. Goshey arose, kicked Dunlap in the knee, swung at him and grabbed him around the ear. Dunlap hit Goshey again and he fell to the floor. Other officers came to his assistance and helped him handcuff Goshey.

On appeal, the defendants assert that because of trial errors they are entitled to a reversal of the judgment and a new trial. In the presentation of their case in chief the defendants produced Margaret Keilitz who, during 1967, was the administrative supervisor of the Obstetrics and Gynecology Department at Cook County Hospital. She testified that an individual coming to pick up a patient must first secure a pass from the information center. From there he would proceed to the maternity ward where he would submit his pass. On redirect examination, she stated that if it were necessary for a person to return to the hospital a second time another pass would have to be secured to obtain admittance.

Following her redirect examination, the trial judge propounded a lengthy series of questions about which the defendants complain. The basic inquiry of the court concerned a hypothetical person coming to the maternity ward with some clothing for a lady who was to be picked up, but who would not be ready to leave for two hours. Keilitz stated that if the individual could not wait he would be asked to return and would be told to go to the information desk to obtain a pass; the pass used on the first occasion would no longer be valid. After several more questions Keilitz indicated that it would be the responsibility of a person on the staff to instruct the individual that he must secure another pass. The court then inquired: "Now, suppose that person didn't instruct?" Keilitz answered: "That's why we have security." Defense counsel interrupted and the court declared, "I'm in the interest of justice here  *  *  *. You can object, I'm going to try and find it out." After more questions were asked the court inquired: "*  *  *  suppose the person didn't tell him, the person, what the procedure is downstairs?" Defense counsel interposed an objection and the court responded: "I'm asking the question."

It has been observed that the instances are rare and the conditions exceptional which would justify the trial judge in conducting an extensive examination of a witness. (*People v. Trefonas* (1956), 9 Ill.2d 92, 136 N.E.2d 817; *People v. Rongetti* (1928), 331 Ill. 581, 163 N.E. 373.) When the court conducts a lengthy examination it is difficult for the judge to preserve a judicial attitude and the appearance of impartiality, and counsel may find himself in the embarrassing position of objecting to what he deems are improper questions. (*People v. Krejewski* (1928), 332

Ill. 120, 163 N.E. 438.) The court's response, "I'm asking the question," to one of the objections aggravated the situation. The jurors may have inferred that the judge was hostile to the defense, a factor apt to influence them in arriving at their verdict. *People v. Santucci* (1962), 24 Ill.2d 93, 180 N.E.2d 491.

In addition, on direct examination defense counsel had begun a question by asking: "Would it be possible for a person to get a pass * * *," and the court interjected: "Are you asking her a supposition * * *. Don't ask her what is possible, ask her what she knows." Yet two of the court's own questions began with: "Suppose they didn't instruct that person * * *?", and "Suppose the person didn't tell him * * *." Thus, the court couched its questions in a form which had been prohibited to defense counsel. Based upon both its length and character we believe the court's interrogation was improper.

The defendants asked leave to amend the pleadings to conform to the proof by setting forth that Dunlap acted in self-defense when striking Goshey. Their motion was denied. Ill. Rev. Stat. 1971, ch. 110, par. 46(3) provides: "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." The defendants did not seek leave to amend their pleadings until the conference with the court regarding jury instructions; however, from the outset of the trial it was clear that they were relying on self-defense to establish their freedom from liability for the plaintiff's injury. Defense counsel declared in his opening statement: "And the evidence will show further, that the plaintiff hit Mr. Dunlap first. That the defendant, in self-defense hit the plaintiff." Dunlap's account of the altercation supported this assertion. He stated that as he attempted to guide Goshey to the front of the hospital to obtain a pass, Goshey grabbed his sweater and struck him several times upon the face. Only then did he strike Goshey. This version of the incident was corroborated by Earl Deon, another security guard, who testified that he saw Goshey and Dunlap speaking to each other, and then noticed Dunlap take Goshey's arm to lead him toward the door. He further testified that as they stepped through a doorway Goshey struck Dunlap, who then hit Goshey.

■■ The power to allow the amendment of pleadings should be liberally exercised in favor of permitting such new pleadings as are essential to the presentation of a party's cause of action or defense. (*Scardina v. Colletti* (1965), 63 Ill.App.2d 481, 211 N.E.2d 762; *Irwin v. Omar Bakeries, Inc.* (1964), 48 Ill.App.2d 297, 198 N.E.2d 700.) Both Goshey and Dunlap presented complete descriptions of the altercation to the jury and we do not perceive any prejudice which would have accrued

to the plaintiff had the trial court permitted the defendants to amend the pleadings as they sought. Since the issue of self-defense was vital to the defendant's case, the amendments should have been allowed and an appropriate instruction given to the jury.

The plaintiff asserted that three security guards named Sullivan, Richmond and George should have been called as witnesses by the defendants, and at his request the court gave the jury, over defense objections, an instruction (IPI 5.01) which stated:

"If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:

1. The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The witness was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him.

4. No reasonable excuse for the failure has been shown."

When Earl Deon assisted Dunlap during the altercation, he was accompanied by a guard identified only as Sullivan who did not appear at the trial. Deon testified that Sullivan had not worked at the Cook County Hospital for years and defense counsel asserted that all that was known about him was that he lived in Chicago. John Richmond, another guard, was not alleged to have observed the incident but merely to have been in the room into which Goshey was taken. The defense denied Richmond was under its control, and no contrary evidence was introduced. Jonathan George, who Dunlap testified was the chief of security, had allegedly observed part of the occurrence and the plaintiff urges that George would have testified as to the propriety of his conduct. However, as with Richmond, defense counsel stated without contradiction that George was no longer under control of the defendants. Indeed, Dunlap had answered in response to an interrogatory submitted by the plaintiff prior to the trial that George's current address was unknown to him.

An instruction similar to the one given in this case was held properly refused in *Hoff v. Yellow Cab Co.* (1964), 53 Ill.App.2d 333, 203 N.E.2d 8. In *Hoff* the defendant failed to show that a witness was under the control of the plaintiff or not equally available to him. In the present case, Goshey did not establish either that the security guards still remained under the defendants' control or that they were not as available to him as to them. In the absence of such evidence the instruction should not have been given.

■■   After the court clerk read the verdict in favor of the plaintiff, the judge stated: "There will be a judgment on the verdict." The judge then invited polling of the jury and he twice instructed the jurors that, when each juror's name was called by the clerk, he should answer: "This was and this is now my verdict." The polling of a jury is intended to ascertain whether a juror has been coerced by his associate jurors into agreeing upon a verdict; therefore, while polling the jury the trial court must take care not to hinder a juror's expression of dissent. (*People ex rel. Paul v. Harvey* (1972), 9 Ill.App.3d 209, 292 N.E.2d 124.) Without considering the possible influence upon the jury of the court's entering judgment on the verdict in the presence of the jury before permitting a poll, it is evident that there was a total failure on the part of the court to provide for the possibility of a juror's disagreement with the verdict. This omission and the aforementioned trial errors necessitate the reversal of the judgment and the granting of a new trial.

■■■   One further assignment of error merits brief comment since the issue is likely to recur at a new trial. In his direct examination Goshey testified that when he arrived at the maternity ward on his first visit to the hospital, he was informed that the woman he was to pick up was not ready to leave. He testified that a nurse told him: "I'll have her ready for you at four o'clack, you come back on this floor at four o'clock and she will be ready." The defendants claim that this statement was hearsay. An out-of-court declaration offered as proof of the matter asserted therein is hearsay and is inadmissible. (*People v. Hoffmann* (1970), 124 Ill.App. 2d 192, 260 N.E.2d 351.) However, when the out-of-court statement is used not as evidence of the fact asserted, but as circumstantial evidence for another purpose, the hearsay rule does not apply. (*Gass v. Carducci* (1962), 37 Ill.App.2d 181, 185 N.E.2d 285.) The statement of the nurse was clearly admissible, not to prove that the woman to be picked up would be ready at four o'clock, but for the purpose of establishing that the statement was made and thus showing the reason for the plaintiff's returning to the hospital. (*Cf. People v. Carpenter* (1963), 28 Ill.2d 116, 190 N.E.2d 738.) Although the defendants contend that the statement should have been excluded as hearsay because the nurse was not identified by name, no authority has been produced to support this assertion. The statement was properly received.

The judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

McNAMARA and McGLOON, JJ., concur.