In re ESTATE OF MARY ANN WILSON, a Disabled Person (Arnetta Williams, Guardian of the Estate of Mary Ann Wilson, Petitioner-Appellee, v. Karen A. Bailey, Respondent-Appellant).

First District (6th Division)    No. 1—07—1433

Opinion filed March 31, 2009.

772

O'MALLEY, P.J., dissenting.

George H. Klumpner, of Law Office of G.H. Klumpner, of Chicago, for appellant.

Sheryl E. Fuhr, Ralph M. Goran, and Adam W. Weber, all of Sheryl E. Fuhr & Associates, of Chicago, for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

Respondent Karen A. Bailey appeals for the second time in this guardianship action arising from her alleged financial exploitation and physical neglect of an elderly Chicago resident, Mary Ann Wilson. Bailey held powers of attorney over Wilson's property, real estate, and health care, when Wilson's investment account was emptied and she was found in poor physical and mental health. After appointing a guardian *ad litem* who investigated the circumstances, the circuit court "suspended" Bailey's agency relationship and named Wilson's cousin, petitioner Arnetta Williams, as temporary guardian. Bailey sought a temporary restraining order to prevent Williams from acting pursuant to the court's temporary guardianship order, but her motion was denied and we affirmed the court's ruling in *In re Estate of Wilson*, 373 Ill. App. 3d 1066, 869 N.E.2d 824 (2007). In the circuit court, Williams and the guardian *ad litem* petitioned to permanently revoke the powers of attorney and obtain an accounting, and Bailey filed a motion for substitution of judge for cause pursuant to section 2—1001(a)(3)(iii) of the Code of Civil Procedure (735 ILCS 5/2—1001(a)(3)(iii) (West 2006)) and to dismiss her opponents' petitions.

The trial judge found the motion for substitution of judge was deficient and denied it instead of transferring it to another judge for hearing, from which Bailey now appeals. Bailey also appeals from the denial of her motion to dismiss the petition for revocation and an accounting, from the revocation of the powers of attorney, and from the entry of judgment against her in favor of Wilson's estate in the amount of $297,708.95.

We first set out the facts, procedural history, and legal principles relevant to Bailey's motion for substitution of judge for cause which was denied by the judge named in the motion. On May 3, 2006, a public health nurse employed by Chicago's department of aging to provide crisis intervention for at-risk senior citizens went to Wilson's home to conduct a well-being check. Wilson was then 86 years old and residing at 10963 South Sangamon Street with Clifford Service, who was also in his 80s. The nurse, Sherry Ponce De Leon, talked with Wilson and Service, and their part-time nurse, Arlette Bowman, and observed that Wilson and Service were frail, confused, and in need of medical intervention. Bowman said there were no medications in the house for Wilson or Service, and Wilson and Service complained they had not been seen by a physician and that their pension checks were missing. Ponce De Leon drove Wilson and Service to St. Mary's of Nazareth Hospital, where they were admitted to the hospital by an emergency room physician and where they would remain for several weeks before being transferred to skilled nursing care. Shortly after Ponce De Leon's intervention, Isaac Heard, Sr., who is Wilson's brother or cousin and resides in Charlotte, North Carolina, filed a petition on May 12, 2006, to have Wilson declared disabled as a result of severe dementia and to appoint Wilson's cousin Arnetta Williams as her guardian.

The Probate Act of 1975 provides that "[u]pon the filing of a petition by a reputable person or by the alleged disabled person himself or on its own motion, the court may adjudge a person to be a disabled person" (as defined by the Act) and may appoint (1) a guardian of his person "if it has been demonstrated by clear and convincing evidence that because of his disability he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of his person," (2) a guardian of his estate "if it has been demonstrated by clear and convincing evidence that because of his disability he is unable to manage his estate or financial affairs," or (3) a guardian of his person and of his estate. 755 ILCS 5/11a—3 (West 2004). Before appointing a guardian under the Act, the court may appoint a temporary guardian "upon a showing of the necessity therefor for the immediate welfare and protection of the alleged disabled person

or his estate on such notice and subject to such conditions as the court may prescribe." 755 ILCS 5/11a—4 (West 2004). In determining the necessity for temporary guardianship, the immediate welfare and protection of the alleged disabled person and his or her estate shall be of paramount concern, and the interests of the petitioner, any care provider, or any other party shall not outweigh the interests of the alleged disabled person. 755 ILCS 5/11a—4 (West 2004). A temporary guardianship expires within 60 days after the appointment or whenever a plenary guardian is appointed, whichever occurs first. 755 ILCS 5/11a—4 (West 2004).

The Act further provides that upon the filing of a petition for adjudication of disability and appointment of guardian and before a hearing on the petition:

> "The court shall appoint a guardian ad litem to report to the court concerning the [person's] best interests consistent with the provisions of this Section, except that the appointment of a guardian ad litem shall not be required when the court determines that such appointment is not necessary for the protection of the [person] or a reasonably informed decision on the petition. *** The guardian ad litem may consult with a person who by training or experience is qualified to work with *** persons with mental illness, or physically disabled persons, or persons disabled because of mental deterioration ***. The guardian ad litem shall personally observe the [person] prior to the hearing and shall inform him orally and in writing of the contents of the petition and of his rights under Section 11a—11. The guardian ad litem shall also attempt to elicit the [person's] position concerning the adjudication of disability, the proposed guardian, a proposed change in residential placement, changes in care that might result from the guardianship, and other areas of inquiry deemed appropriate by the court. At or before the hearing, the guardian ad litem shall file a written report detailing his or her observations of the [person], the responses of the [person] to any of the inquiries detailed in this Section, the opinion of the guardian ad litem or other professionals with whom the guardian ad litem consulted concerning the appropriateness of guardianship, and any other material issue discovered by the guardian ad litem. The guardian ad litem shall appear at the hearing and testify as to any issues presented by his or her report." 755 ILCS 5/11a—10 (West 2004).

On the same day that Heard filed his petition for adjudication of disability, the court appointed Sandra Theil as Wilson's guardian *ad litem* (subsequently GAL) and ordered her to interview Wilson and report to the court regarding the merits of Heard's petition.

On May 15, 2006, the GAL appeared before the court and reported that Wilson's admission to the hospital was attributed to "failure to thrive and aphasia[1], organic brain syndrome and abandonment," and that, when interviewed by the GAL the previous afternoon, Wilson did not know where she was, why she was in the hospital or how she got there, her age, her date of birth, her address, if she ever had children, or what medications, if any, she was taking. Wilson's medical chart indicated a "psych consult" described her as "oriented only to name, [unable to] give her medical history, her face is expressionless, concentration impaired; impression: organic brain syndrome with agitation." In addition, Wilson's doctor said Wilson was in need of constant supervised nursing and in the GAL's opinion Wilson "certainly needs protection." The GAL also reported to the court that a year and a half prior, on January 16, 2004, Wilson had given an acquaintance, respondent Bailey, a general durable power of attorney and a healthcare power of attorney. The GAL described Wilson's circumstances as "neglect" and she asked the court to "suspend[ ] [Bailey's agency relationship] for the time being," "otherwise, you have [the] two powers of attorney in [Wilson's medical] charts and you have a [GAL] and that's a lot of confusion [for] the health care people." Williams (Wilson's cousin) supplemented the filings with her own petition to be appointed temporary guardian of Wilson's person and estate. Williams informed the court that Bailey had used her authority under the power of attorney to remove Wilson's brother from an investment account and "zero[ ] out" the balance. The circuit court granted the GAL's request to "suspend[ ]" the powers of attorney and granted Williams' petition to be appointed temporary guardian. The court specifically authorized Williams to direct Wilson's medical care, investigate her funds and mail, investigate the powers of attorney, and "collect from Karen A. Bailey the signature stamp bearing Mary Ann Wilson's name." The court also scheduled the guardianship petition for a full hearing on the merits on June 14, 2006.

Williams was unable to enter Wilson's locked house after its two residents were hospitalized and nearly two weeks later had the locks rekeyed by a locksmith on May 16, 2006. Until that time, Service's son David had the only key to the residence. David was respondent Bailey's boyfriend, now husband, and resided with her in Crete, Illinois.

On June 7, 2006, Bailey filed an "emergency" motion to vacate the court's orders, temporarily restrain and preliminarily enjoin Williams and the GAL from further action, and obtain an accounting

---

[1]Aphasia is the loss of ability to produce or comprehend language. Webster's Third New International Dictionary 99 (1986).

from Williams for $200,000 cash, which was purportedly in the house when Wilson was transported to the hospital. Bailey contended that appointing a GAL and temporary guardian was contrary to various sections of the Probate Act (755 ILCS 5/11a—8.1, 11a—18(e) (West 2004)) and the Power of Attorney Act (755 ILCS 45/2—10 (West 2004)). She indicated she would present the motion to the judge the following morning. According to Bailey, the parties were scheduled to appear in court on the morning of June 8, 2006, for a status report and Bailey intended to obtain a briefing schedule and hearing date for her newly filed motion. According to Williams, however, Bailey scheduled her motion to be heard on the merits on June 8, 2006, apparently without benefit of any briefing or discovery.

On June 8, 2006, Bailey and her attorney, Williams and her attorney, the GAL, and Service's son David appeared in court. The court asked Williams to report on Wilson's status, and Williams stated Wilson had been transferred to Halsted Terrace Nursing Center and was benefitting from hydration, nutrition, physical therapy, occupational therapy, and visitors. Her color had returned and she was more interactive and oriented to her surroundings. When asked about her investigation into Wilson's assets, Williams reported that she gained access to the residence and "discovered some very disturbing things," such as that by November of 2005, Bailey had closed Wilson's $187,000 investment account with USB and that the balance of Wilson's LaSalle Bank account was "down to around $3,000 now." Furthermore, Bailey's initial withdrawal from the USB account was $25,400 and she had deposited the cash into her own personal credit union account. At that point in the proceedings, Bailey's attorney informed the court of the pending motion to vacate the court's orders and said this motion challenged the court's statutory authority (jurisdiction) to enter guardianship orders prior to a hearing to determine whether Bailey had used the power of attorney for the best interest of the ward. Counsel also pointed out that Bailey was not given notice of the temporary guardianship hearing and contended she should have been notified. Most of the subsequent colloquy was set out in detail in the first appellate decision, *In re Estate of Wilson*, 373 Ill. App. 3d at 1068-71, 869 N.E.2d at 827-829. The portion relevant to this second appeal includes the following:

> "MR. BRADEN [(Bailey's attorney)]: Today she has been served and she is aware of everything that has happened, and that's my point, Judge, that's my point. And this is the reason why I—
>
> THE COURT: Well, counsel, let me ask you. Can I get [your] client under oath and have her answer questions as to what happened to the all this money? Can we get that done?

MR. BRADEN: Look, Judge, if we had a hearing, if we had a hearing—

THE COURT: I would like to know now because I'm concerned. These are serious allegations.

MR. BRADEN: She was acting in accordance with her power of attorney to do that, and if you want to put her under oath, of course, she filed a verified petition, but she's prepared to—

THE COURT: It doesn't go into the particulars of the assets, though."

Bailey was then placed under oath and the court questioned her regarding Wilson's assets and health. The court's examination of Bailey spans 15 pages in the 50-page transcript of the June 8, 2006, proceedings. In response to the court's questions, Bailey testified that she had initially withdrawn $25,000 from Wilson's USB account and placed it in a box kept at Wilson's house, because Wilson and Service told her to do so. The court expressed doubt about Bailey's testimony that Wilson was first diagnosed with slight dementia in January 2006, stating: "So you're telling me she was not diagnosed with dementia until January of '06? You're telling me this under oath," and "It's unusual, I mean, it could happen from January to May [(between the purported diagnosis and Heard's petition for disability)], four months' time dementia goes from slight to severe." After Bailey testified the $25,000 was added to $50,000 already in the box and repeated that she acted only in accordance with Wilson's direction, the court remarked, "The concept of POA [(power of attorney)] seems to be lost on you." When Bailey testified that the remaining $151,000 in the investment account was subsequently withdrawn and placed in the box, the court stated, "Mr. Brad[en], I don't know how you can ever argue this is appropriate activity by any Power of Attorney." When Bailey insisted she could "only go by the direction," the court remarked that "[t]aking direction from your demented principal" is "not what the Power of Attorney does." Bailey stated she "checked this box all the time to make sure that [the] money was still there" and had last looked in it on May 1, which was just before Wilson and Service were transported to the hospital on May 3. She also testified that the part-time caretaker "knew nothing about the money" and that the box was kept in a locked closet. When Bailey stated she was "there all the time when the caretaker was there" and David interjected, "Usually I was there," the court responded, "Folks, I don't believe that." During the court's examination of Bailey, Williams commented that the family was never notified that Wilson and Service had been married in 2005 and she twice remarked that she was "very concerned" by Bailey's depletion of Wilson's assets. The GAL added,

"We have a lot of checks endorsed and deposited in various places." Bailey's attorney countered that it was not unheard of for a person to distrust banks and keep large sums of money at home, and the court responded, "If a person who is without disability wants to keep cash in the house go right ahead, but if you're acting as an agent or Power of Attorney, I think that's questionable."

After examining Bailey, the court asked if Williams wanted to file a written response to Bailey's emergency motion for a temporary restraining order, and Williams' attorney declined. The proceedings continued:

"MR. GOREN [(Williams' attorney)]: We can't operate with this Power of Attorney with this lady having control of the funds and person[ ].

THE COURT: Your request for TRO is denied.

MR. GOREN: Thank you."

This ruling left open the portion of the motion seeking to vacate the appointments of a GAL and temporary guardian and thus restore Bailey's authority under the powers of attorney. The proceedings continued:

"THE COURT: All right. So let's move along here. We need an accounting from your client.

MS. BAILEY: I would not have wrote—

MR. BRADEN: Are you denying it without a hearing on it?

THE COURT: I've had her under oath for how long now? You want someone to be reinstated who can't even identify where $120,000 is?

\* \* \*

It's appealable if you want to take it up. Do you want to further argue it? Counsel, you want me to reinstate a Power of Attorney. That would be ridiculous for this Court to reinstate a Power of Attorney where I have a very strong suggestion that hundreds of thousands of—

MS. BAILEY: I would not have wrote checks in my name if I was trying to do anything [improper]. I can only go by what [Wilson] was telling me. I can only—they're not showing you where all her bills had to be paid.

THE COURT: At some point maybe she will account for every penny, that could possibly be, Mr. Brad[en], that could happen, but until I get an accounting for every penny, maybe everything she says is true, all the money can be accounted for, but if it can't be, I will be remiss to allow her to go back to control her money at this point, okay.

MR. BRAD[EN]: \*\*\* I will discuss that with my client to see whether she wants to exercise her rights in that regard.

THE COURT: Again, I need an accounting from your client. So this Court is demanding an account[ing] on the Power of Attorney."

At the conclusion of the proceedings on June 8, 2006, the court ordered Bailey to file an accounting by June 27, 2006.

On June 27, 2006, instead of filing an accounting, Bailey filed a motion to amend her previous motions, citing a "revelation of additional law and facts that are relevant in assisting the court in rendering a just and correct ruling on the motion," and on June 30, 2006, she filed a "supplemental amended" version. After a hearing on July 5, 2006, the court denied the portion of the motion seeking temporary and injunctive relief, extended the deadline for Bailey's accounting to July 21, 2006, and scheduled an August status date. As indicated above, this court rejected Bailey's arguments on interlocutory appeal, concluding the circuit court had subject matter jurisdiction and statutory authority to appoint a temporary guardian despite the powers of attorney and that Bailey was not entitled to temporary or preliminary injunctive relief against Williams. *In re Estate of Wilson*, 373 Ill. App. 3d at 1076-77, 869 N.E.2d at 834.

Meanwhile, the parties continued to pursue their respective positions in the circuit court, with Williams seeking to freeze any of Wilson's assets in Bailey's control, obtain records of any receipts and disbursements of Wilson's assets, obtain a full accounting, and leave to list Wilson's residence for sale in order to raise funds to pursue the assets; with the GAL seeking revocation of the powers of attorney and payment of her fees; and Bailey seeking to vacate the court's prior orders.

On October 16, 2006, while these various motions or petitions were pending, Bailey filed the motion at issue in the current appeal seeking substitution of judge for cause. Although Bailey's motion was only two pages long and the transcript she relied upon was not attached to the motion, she nevertheless contended she could not receive a fair and impartial hearing on the pending motion to revoke the powers of attorney, as demonstrated on June 8, 2006, by the judge's assumption of an advocacy role when she spontaneously examined Bailey and stated Bailey was not believable. Williams responded in relevant part by citing *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 854 N.E.2d 774 (2006), *Alcantar v. Peoples Gas Light & Coke Co.*, 288 Ill. App. 3d 644, 681 N.E.2d 993 (1997), and *People v. Damnitz*, 269 Ill. App. 3d 51, 645 N.E.2d 465 (1994), for the proposition that a motion for substitution of judge for cause must make a threshold showing of prejudice to warrant transfer to another judge for hearing. Williams argued Bailey failed to meet that threshold and that the timing of Bailey's motion, four months after the purported demonstration of bias and the day

before various motions adverse to Bailey were to be heard or scheduled for hearing, indicated Bailey's real motivation was to delay the proceedings and judge shop. Bailey filed a lengthy written reply detailing her concerns about judicial prejudice and she tendered the missing transcript. Bailey also filed a motion seeking "reassignment of case." This additional motion appears to be directed at Williams' threshold argument, as Bailey emphasized statutory language she contended entitled her to a hearing before another judge. Several days later Bailey filed an amended version of her motion for "reassignment of case." Thus, Bailey petitioned in various ways that her pending motion be heard by a different judge.

On November 6, 2006, the judge named in the motion for substitution presided over the hearing of that motion. A verbatim transcript or bystander's report of the proceedings was not included in the record tendered for our review. Regardless, the judge's written order specifies that after considering the parties' oral arguments and written briefs, the judge found the motion did not make a threshold showing of prejudice to require a hearing before another judge and then denied the motion for substitution.

On November 11, 2006, the judge commenced a hearing on the remaining motions and petitions. After nine additional days of proceedings between December 7, 2006, and March 28, 2007, that judge rejected Bailey's arguments and granted the relief sought by the GAL and temporary guardian. While Bailey and the temporary guardian were briefing their respective positions on appeal, Service died on January 14, 2008.

■ Bailey's first contention on appeal is that she was entitled by statute to a hearing on the merits of her petition for substitution of judge by a judge other than the one named in the petition. The statute Bailey is relying upon provides:

"§2—1001. Substitution of judge.

(a) A substitution of judge in any civil action may be had in the following situations:

* * *

(3) Substitution for cause. When cause exists.

(i) Each party shall be entitled to a substitution or substitutions of judge for cause.

(ii) Every application for substitution of judge for cause shall be made by petition, setting forth the specific cause for substitution and praying a substitution of judge. The petition shall be verified by the affidavit of the applicant.

(iii) Upon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause

exists shall be conducted as soon as possible by a judge other than the judge named in the petition. The judge named in the petition need not testify but may submit an affidavit if the judge wishes. If the petition is allowed, the case shall be assigned to a judge not named in the petition. If the petition is denied, the case shall be assigned back to the judge named in the petition." 735 ILCS 5/2—1001 (West 2006).

Our research shows that the statutory language requiring a hearing "by a judge other than the judge named in the petition" is an addition to the statute which became effective in 1993. 735 ILCS 5/2—1001(a)(3)(iii) (West 2006). The pre-1993 version of section 2—1001 referred to a "change of venue" rather than "substitution of judge" and did not specify that the hearing "shall be conducted as soon as possible by a judge other than the judge named in the petition." Pub. Act 87—949, §1, eff. January 1, 1993. Postamendment, it was argued in *Jiffy Lube International, Inc. v. Agarwal*, 277 Ill. App. 3d 722, 727, 661 N.E.2d 463, 467 (1996), that the defendant was entitled to a substitution of judge on the ground that the judge became biased against the defendant and his counsel once counsel lodged a complaint with the Judicial Inquiry Board. *Jiffy Lube*, 277 Ill. App. 3d at 724, 661 N.E.2d at 467. The judge named in the petition deemed the petition untimely and refused to allow it to be heard by another judge. *Jiffy Lube*, 277 Ill. App. 3d at 724, 661 N.E.2d at 465. The defendant argued on appeal that this was procedurally improper and the appellate court agreed the proceedings were "not in compliance with the [amended] statute, which mandates that such a petition shall be heard by a judge other than the judge named in the petition." *Jiffy Lube*, 277 Ill. App. 3d at 727, 661 N.E.2d at 467, citing 735 ILCS 5/2—1001(a)(3)(iii) (West 1994). That case is somewhat distinguishable from the instant case, in that it does not refer to a "threshold screening." However, the court's application of the statute is helpful, and having contemplated the statutory language ourselves, we hold it was reversible error for the judge named in Bailey's substitution motion for cause to determine the motion would not be transferred to another courtroom for hearing.

The primary principle of statutory construction is to ascertain and give effect to the intent of the legislature. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117, 866 N.E.2d 227, 235 (2007). The language of the statute is considered the most reliable indicator of the legislature's objectives in enacting a particular law. *Town & Country Utilities*, 225 Ill. 2d at 117, 866 N.E.2d at 235. When construing a statute, the judiciary is to give the legislature's

words their plain and ordinary meaning, and where the legislative language is clear and unambiguous, we must apply it as written without resort to further aids of statutory construction. *Town & Country Utilities*, 225 Ill. 2d at 117, 866 N.E.2d at 235. In addition, a court must not construe any words and phrases in isolation, and must interpret them in light of other relevant provisions of the statute. *Town & Country Utilities*, 225 Ill. 2d at 117, 866 N.E.2d at 235. A court has no authority to depart from the plain language of a law by reading into it exceptions, limitations, or conditions that the legislature did not intend. *Town & Country Utilities*, 225 Ill. 2d at 117, 866 N.E.2d at 235.

These principles lead us to conclude that the statutory provision at issue does not authorize an Illinois judge accused of bias or prejudice in a civil proceeding to control the disposition of a petition seeking change of judge for cause. The statute clearly and unambiguously states, without condition or equivocation, that when a civil litigant asserts his or her rights under this law, the action is to be transferred for hearing before another member of the judiciary. The statute provides: "Upon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition." 735 ILCS 5/2—1001(a)(3)(iii) (West 2006). While the statute also provides that the contents of a petition for substitution of judge for cause shall "set[ ] forth the specific cause for substitution," be "verified by the affidavit of the applicant," and "pray[ ] a substitution of judge," we do not construe this as authority for a judge accused of bias or prejudice to scrutinize the contents of the petition or the affidavit to determine whether these statutory components are adequately presented. 735 ILCS 5/2—1001(a)(3)(ii) (West 2006). Read together, the subparagraphs of the statute require the judge charged with bias or prejudice to transfer for hearing any petition supported by affidavit, that is, any petition in proper form, so that some other judge may decide the sufficiency and veracity of the contents. Whether the petition sets out detailed facts, whether the petition is supported by a sworn statement containing facts personally known to the declarant and the declarant's signature, whether the allegations are true, and whether the allegations amount to demonstrated judicial prejudice or bias are all questions that are properly addressed by a judge whose impartiality is not in dispute. A two-stage hearing process in which the first judge decides whether the allegations are sufficient and the second judge decides whether they are true violates the clear mandate: "*[u]pon the filing* of a petition for substitution of judge for cause, *a hearing* to determine whether the cause exists shall be conducted as

soon as possible by a judge other than the judge named in the petition." (Emphasis added.) 735 ILCS 5/2—1001(a)(3)(iii) (West 2006). If the legislature wanted the initial judge to control the disposition of a petition seeking his or her substitution for cause, the legislature could have included conditional or limiting language to that effect. The legislature did not provide for a "threshold screening" before a civil action is transferred for hearing by another judge, and we have no authority to depart from the plain language of a law by reading into it an exception, limitation, or condition that the legislature did not intend. *Town & Country Utilities*, 225 Ill. 2d at 117, 866 N.E.2d at 235. We believe the procedure described in *In re Marriage of Schweihs*, 272 Ill. App. 3d 653, 650 N.E.2d 569 (1995), is what the legislature envisioned. In the *Schweihs* divorce case, the husband filed two different petitions seeking substitution of judge for cause. He filed the first petition in 1992, before the statutory amendment took effect in 1993, and the second petition in 1993. As we indicated above, prior to 1993, there was no statutory language requiring that a substitution petition to be heard "as soon as possible by a judge other than the judge named in the petition." Pub. Act 87—949, §1, eff. January 1, 1993; see also *Schweihs*, 272 Ill. App. 3d at 658, 650 N.E.2d at 672 (discussing statutory amendment). Accordingly, the husband's 1992 petition was heard by the judge named in the petition and the husband's 1993 petition was heard by a different judge. *Schweihs*, 272 Ill. App. 3d at 658, 650 N.E.2d at 572.

Adherence to this procedure is particularly appropriate in a case in which allegations of bias are based on the conduct and methods of the trial judge. This is not an instance in which substitution of judge was sought due to an unfavorable ruling. Bailey sought substitution on the alleged grounds that the judge disregarded the function of a judge and assumed that of an advocate and also predetermined a pending motion.

With respect to the first ground, although it is permissible for a judge to question a witness in order to elicit the truth or bring light to a material issue which seems obscure, a judge should avoid extensive questioning and must not advocate a particular position. *Olsen v. Staniak*, 260 Ill. App. 3d 856, 864, 632 N.E.2d 168, 175 (1994). In *People v. Green*, 17 Ill. 2d 35, 40, 160 N.E.2d 814, 817 (1959), for instance, when an alibi witness's testimony "was vague and suggested that she might not be telling the truth," the judge asked her some brief, clarifying questions. The alibi witness had given birth at the hospital and returned home with her new baby less than a day before the defendant allegedly came to visit and stayed for several hours. *Green*, 17 Ill. 2d at 38-39, 160 N.E.2d at 816. The judge wanted to

know how many times the defendant had been to the alibi witness's home, and his questions elicited that the defendant was there only twice—once before the armed robbery at issue, on the day of the robbery, and never again—suggesting it was unlikely the defendant was actually paying the new mother an extended visit when the crime was being committed. *Green*, 17 Ill. 2d at 38-39, 160 N.E.2d at 816. The appellate court emphasized that the judge's examination of the trial witness went to alibi, "was not lengthy," and "neither indicated bias or prejudice, nor an assumption by the court of the role of advocate in the case." *Green*, 17 Ill. 2d at 40, 160 N.E.2d at 817. Another example of permissible questioning is depicted in *Olsen*, 260 Ill. App. 3d at 864, 632 N.E.2d at 175, regarding a motion to sanction counsel for filing pleadings that were not based in fact and were intended to harass or intimidate the opposition. During a hearing of the motion, the judge clarified what facts the attorney knew when he drafted the offensive pleadings. *Olsen*, 260 Ill. App. 3d at 864, 632 N.E.2d at 175. During this inquiry, the judge did not advocate the court's position. *Olsen*, 260 Ill. App. 3d at 864, 632 N.E.2d at 175. Thus, there are instances when questions from the bench are warranted. Even so, "the instances are rare and the conditions exceptional which would justify *** an extensive examination of a witness." *Goshey v. Dunlap*, 16 Ill. App. 3d 29, 31, 305 N.E.2d 648, 650 (1973). Notably, "[w]hen the court conducts a lengthy examination it is difficult for the judge to preserve a judicial attitude and the appearance of impartiality, and counsel may find himself in the embarrassing position of objecting to what he deems are improper questions." *Goshey*, 16 Ill. App. 3d at 31, 305 N.E.2d at 650.

In her petition for substitution, Bailey alleged the case was scheduled for a status report only on June 8, 2006, and Bailey expected the judge to schedule a hearing on the newly filed "emergency" motion for a temporary restraining order. Instead, with her attorney's reluctant acquiescence, the judge called Bailey as a witness, placed her under oath, and questioned her, at length, about issues which were not raised by Bailey's pending emergency motion (the court's examination took up 15 pages of the report of proceedings), and then denied the motion on those other grounds. We note, also, that the individuals who would ordinarily examine Bailey, including her own lawyer, the GAL, and the lawyer for the temporary guardian, were essentially bystanders to the examination and had no questions for her. During this part of the proceedings, Bailey's attorney asked the judge to schedule a hearing, the temporary guardian commented on Wilson's undisclosed marriage to Service and sudden lack of assets, and the GAL seconded the negative sentiment about Bailey's financial manage-

ment. After the judge's examination, the attorney for the temporary guardian declined to file a written response to Bailey's pending emergency motion. Thus, the proceedings Bailey complained of contrasted strongly with the short, clarifying questions that came from the bench during the trial for armed robbery in *Green*, 17 Ill. 2d at 40, 160 N.E.2d at 817, and the hearing for attorney sanctions in *Olsen*, 260 Ill. App. 3d at 864, 632 N.E.2d at 175. Williams' account of the proceedings differs somewhat, in that she says Bailey's emergency motion for a temporary restraining order was scheduled for hearing that day. Even if this were true, the three attorneys were bystanders to the judge's extensive examination of a reluctant witness, the judge's questions were not germane to the arguments posed in Bailey's motion, and the motion was denied without any apparent consideration of its merits.

Bailey's second basis for seeking a change of judge was that the judge (1) stated Bailey was not "believ[able]" and (2) announced the outcome of Bailey's pending request to vacate the appointment of a GAL and temporary guardian and obtain an accounting from the temporary guardian, when the judge stated Bailey would have to "account for every penny" before the judge would "allow her to go back to control [Wilson's] money."

■ We are not concluding that Bailey's allegations of prejudice are persuasive, only that when allegations of this nature are adjudicated by the judge named in the motion, it may seem the motion is being given insufficient consideration. Allegations of judicial bias or prejudice should always cause the judge named in the motion to proceed with caution. When the judge named in the motion presides over its hearing, the movant may perceive the hearing as yet another instance of partiality or bias, rather than an objective, neutral airing of his or her concerns. A hearing by the same judge can create an appearance of unfairness which far outweighs the inconvenience, delay, administrative burden, and litigation expense that is caused by having the motion heard by a different judge. A motion for substitution of judge for cause can be transferred and heard by a different judge within mere hours, if the circumstances dictate. Moreover, if the opponent believes the allegations are brought merely to cause unnecessary delay, to harass, or to judge shop, these concerns can be presented to the other judge. Because a threshold screening by the judge named in the motion can suggest that the allegations are not receiving objective resolution, the named judge should automatically transfer the motion for disposition to another member of the judiciary. Transferring the motion for consideration by a judge whose neutrality is not in question is

in accord with the spirit of the law, which demands that every case be fairly and impartially tried. *People v. Dieckman*, 404 Ill. 161, 164, 88 N.E. 433, 434 (1949).

Although there was some authority for what the judge did in this case, we do not agree with decisions which allow for a threshold screening in a civil action. The record on appeal indicates the judge conducted a threshold screening in reliance on a line of cases, rather than any specific statutory language. These cases included *In re Estate of Hoellen*, 367 Ill. App. 3d at 248, 854 N.E.2d at 783, which relied on *Alcantar v. Peoples Gas Light & Coke Co.*, 288 Ill. App. 3d at 649, 681 N.E.2d at 996-97, which relied on *People v. Damnitz*, 269 Ill. App. 3d at 55, 645 N.E.2d at 468-69. In our opinion, these cases are not consistent with the statutory language. Additionally, these cases are distinguishable because they did not involve allegations that the judge had assumed an advocacy role or had predetermined the outcome of the very matter pending before that judge.

Furthermore, even if we found the statute at issue permitted a threshold screening, we would reach the same adverse result. The alleged demonstration of bias here consisted of the judge's actions of (1) *sua sponte* examining respondent Bailey during a status report and (2) announcing the outcome of a motion which had not been heard. Thus, this particular petition made a threshold showing of judicial bias.

Again, we express no opinion about the merits of Bailey's allegations. We rule only that the statute at issue required that a different judge hear Bailey's allegations and decide whether the judge assigned to the case should be permitted to continue presiding over the remaining issues. Accordingly, we vacate the denial of Bailey's motion for substitution of judge for cause and remand this matter for hearing on the motion by some judge other than the judge named in the petition. We need not reach the merits of Bailey's additional contentions that the judge should have granted Bailey's motion to dismiss the GAL's motion to revoke agency and obtain an accounting, should have denied the motion to revoke agency and obtain an accounting, and should not have entered a money judgment against Bailey. All orders entered by the same judge after the improper denial of the motion at issue are void and hereby vacated. *Jiffy Lube*, 277 Ill. App. 3d at 727, 661 N.E.2d at 467 (finding that where petition for substitution should have been heard by a judge other than the judge named in the petition, all orders entered subsequent to the hearing were void).

Vacated and remanded.

CAHILL, J., concurs.

PRESIDING JUSTICE O'MALLEY, dissenting:

I respectfully dissent from the majority's opinion. The majority interprets the language of section 2—1001(a)(3) as requiring an automatic transfer of any petition for substitution of judge. I believe such an interpretation is incorrect because it ignores one subsection of the statute or renders it superfluous. It further would allow an automatic transfer no matter how inadequate or frivolous a petition for substitution of judge might be. With regard to subsection (ii), the majority also found that even if it were to consider the sufficiency of the petition presented to the circuit court in the case at bar, it would find the petition to be adequate. I disagree with this conclusion and find Bailey's petition to be insufficient on its face. This insufficiency was only remedied where the majority examined the record, supplying information omitted by Bailey. Further, this opinion also ignores the fact that along with a factually sufficient petition, an affidavit must be provided.

## I. SUFFICIENCY OF THE PETITION

I would hold that a threshold showing of bias along with an affidavit in support of the petition is required before the matter is transferred to another judge for a hearing. Although I acknowledge that a hearing before another judge may only take a few hours in most cases, the majority's automatic transfer rule gives wayward litigants incentive "to roll the dice" on a motion for substitution to delay proceedings potentially starting anew with another judge should the petition be granted. I would suggest that if even a small percentage of litigants choose to avail themselves of the new automatic transfer rule in Cook County where the dockets are already clogged, there will undoubtedly be new delays and delay tactics created.

The petition submitted to the circuit court, in its entirety, is as follows:

"1. The petitioner, Karen Bailey, was appointed power of attorney of Estate and Healthcare by Mary Wilson, principal on January 16, 2004.

2. The power of attorney of Karen Bailey has been suspended by the court.

3. Arnetta Williams had been appointed guardian of Mary Anne [sic] Wilson, alleged disabled person over objection of petitioner.

4. Arnetta Williams has filed a motion to vacate the power of attorney of Karen Bailey.

5. After reviewing to [sic] transcript, of previous proceedings before the court, the petitioner, Karen Bailey, does not believe that she will be accorded a fair and impartial hearing before the Honorable Maureen Connors for the following reasons:

(A) A crucial issue in the determination by Judge Connors as to whether Karen Bailey should continue as agent of the power of attorney is the withdrawal of money by Bailey from an investment account and placing the money in a locked box in a locked closet in the home of Mary Anne [sic] Wilson at the direction of Mary Anne [sic] Wilson and her husband.

(B) On June 8, 2006, Judge Connors without a hearing placed Karen Bailey under oath and asked questions of an adverse nature.

(C) At the conclusion of the questions by the court, Judge Connors stated that she did not believe Karen Bailey after hearing her answers.

(D) Karen Bailey believes that Judge Connors would be predisposed not to believe her at a hearing on the pending motion of Arnetta Williams to revoke the powers of attorney and would not receive a fair and impartial trial.

WHEREFORE, Karen Bailey, agent of the power of attorney for Mary Anne [sic] Wilson, respectfully request[s] this Honorable court to grant the motion for substitution of Judge and transfer the matter of the motion to revoke powers of attorney to be heard by another judge."

Although Bailey has filed a petition, she has failed to do two of the three things which are required by subsection (ii) where she submitted a conclusory petition, unsupported by specific facts, and failed to provide the required affidavit.

The argument contained in Bailey's appellate brief, in its entirety, is as follows:

"While the motion must allege grounds that, if taken as true, would justify granting a substitution for cause, the right to a substitution of a judge as of right is absolute. *Alcanter v. Peoples Gas Light & Coke Co.*, 288 Ill. App. 3d 644, 648 (1997); *Illinois Licensed Beverage Association Inc. v. Advanta Leasing Services*, 333 Ill. App. 3d 927, 932 (2002). Orders entered after a motion for substitution of judge has been improperly denied are void. *Illinois Licensed Beverage Association Inc. v. Advanta Leasing Services*, 333 Ill. App. 3d 927, 934 (2002)."

Bailey's argument on appeal relates to motions for substitution as of *right* and does not even address a substitution of judge for *cause*. She gives no details whatsoever as to the circuit court's actions that showed bias against her.

I disagree with the majority's position that a hearing before a different judge is automatic for two reasons. First, it does not seem reasonable that the legislature would have included section 2—1001(a)(3)(ii) of the Code if it really did not mean to require specific

allegations and an affidavit in support of the petition. Second, two First District cases, *Estate of Hollen* and *Alcantar*, specifically addressed section 2—1001(a)(3) of the Code and the question of whether a hearing before a different judge was automatic. In each instance, this court concluded that it was not. I see no reason to depart from these rulings.[2]

Section 2—1001(a)(3) states:

"(i) Each party shall be entitled to a substitution or substitutions of judge for cause.

(ii) Every application for substitution of judge for cause *shall* be made by petition, setting forth the specific cause for substitution and praying a substitution of judge. The petition *shall* be verified by the affidavit of the applicant.

(iii) Upon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition. The judge named in the petition need not testify but may submit an affidavit if the judge wishes. If the petition is allowed, the case shall be assigned to a judge not named in the petition. If the petition is denied, the case shall be assigned back to the judge named in the petition." (Emphasis added.) 735 ILCS 5/2—1001(a)(3) (West 2006).

The statute, read as a whole as it must be, has two distinct sections. I view subsections (ii) and (iii) as addressing first the facial sufficiency of the petition and then the process by which the petition is decided on its merits, respectively. I agree that the judge against whom bias is alleged should not rule on the merits of the petition, but I see no reason why a judge cannot be trusted to rule upon the facial sufficiency of the submissions. Both subsections use the mandatory "shall" language, which leads me to believe that both sections must be followed and this court has no discretion to dispense with the requirements of subsection (ii). However, based on the majority's ruling, a hearing before a different judge is automatic without regard to whether the petitioner has done anything required in subsection (ii). This interpretation would ensure that a petitioner would get a hearing before a different judge even if alleging bias based on an irrational

---

[2]The majority opines that *Hoellen, Alcantar* and *Damnitz* are not consistent with the language in section 2—1001(a)(3) and are distinguishable based on their specific allegations of bias. I recognize that *Damnitz* was a criminal case, addressing a criminal statute, and I agree that it is not applicable here. *Hoellen* and *Alcantar*, however, are the only two cases that have ever addressed section 2—1001(a)(3)(ii) specifically and have been relied upon in this state for the last 12 years.

reason such as the judge's race or gender or just a bad feeling. It seems logical to me that minimal requirements are written into the statute to address patently frivolous claims and potential abuses of the provision as a delay tactic. I do not believe, and Illinois law does not support the interpretation, that the legislature intended transfer to another judge to be automatic or controlled by the whim of a creative or desperate litigant.

Nor can the statute reasonably be read in a manner where specific allegations and an affidavit are not required, as the majority does here. The majority's reading of the statute appears to assume that section 2—1001(a)(3)(ii) does not apply because the opinion not only discounts Bailey's failure to cite specific causes but excuses her failure to support her petition with an affidavit. See, *e.g., Fisher v. Waldrop*, 221 Ill. 2d 102, 112 (2006) (reviewing court should avoid a statutory interpretation that renders any term meaningless or superfluous). In *Estate of Hoellen*, we analyzed the very language of the statute that was added by amendment on January 1, 1993, and held that "a party's right to have a petition heard by another judge is not automatic. 735 ILCS 5/2—1001(a)(3) (West 2004) (as amended by Pub. Act 87—949, §1, eff. January 1, 1993). In 'order to be entitled to a hearing before another judge on whether a substitution for cause is warranted, the motion must allege grounds that, if taken as true, would justify granting a substitution for cause.' " *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 248 (2006), quoting *Alcantar v. Peoples Gas Light & Coke Co.*, 288 Ill. App. 3d 644, 649 (1997); 735 ILCS 5/2—1001(a)(3) (West 2004) (as amended by Pub. Act 87—949, §1, eff. January 1, 1993). I would affirm this case based on *Hoellen* and *Alcantar* because the interpretation of section 2—1001 in those cases gives meaning to both subsections (ii) and (iii).

It is well established in Illinois that a circuit court judge is presumed to be impartial and the burden of overcoming this presumption rests with the party asserting bias, who must present evidence of personal bias stemming from an extrajudicial source and evidence of prejudicial trial conduct. *Hoellen*, 367 Ill. App. 3d at 248-49, citing *In re Marriage of Hartian*, 222 Ill. App. 3d 566, 569 (1991). In her petition, Bailey did not cite to any specific statement or indicate what the judge said that was indicative of bias, prejudice or partiality and did not support her motion with an affidavit. The majority here dispenses with not only the requirements of subsection (ii) but also the long-standing presumption of impartiality enjoyed by judges in Illinois by reading section 2—1001 as allowing automatic transfer for a hearing.

The majority cites to *In re Marriage of Schweihs*, 272 Ill. App. 3d 653 (1995), for support of its departure from *Estate of Hoellen* and *Al-*

*cantar. Schweihs* does not stand for the proposition that the amendment to section 2—1001(a) of the Code requires an automatic hearing before a different judge once prejudice or bias is alleged. In fact, the *Schweihs* court did not address whether a threshold analysis was to be undertaken at all. The *Schweihs* court reviewed the ruling in the circuit court on the *merits* of specific allegations of prejudice and misconduct. The only conclusion the *Schweihs* court drew from the newly amended statute was that a reviewing court would no longer apply the deferential abuse of discretion standard to the new judge deciding the merits of the allegations because a different judge would not be intimately familiar with the proceedings, as was the judge against whom prejudice was alleged. The court in *Schweihs* stated:

> "After the new statute governing motions for substitution of judge went into effect on January 1, 1993, a judge facing a petition for substitution for cause needed to refer the petition to 'a judge other than the judge named in the petition.' [Citation.] This court no longer owes the trial court the extreme deference appropriate under the prior statute, because the trial judge deciding the petition no longer has 'unique insight into the thought processes of the judge who is alleged to be biased.' [Citation.] The trial court, like any other fact finder, must weigh the evidence to determine whether the named judge showed prejudice. We find that under the revised statute, as with the similarly revised section of the Code of Criminal Procedure of 1963 [citation], we now will not reverse a determination on allegations of prejudice unless the finding is contrary to the manifest weight of the evidence." *Schweihs*, 272 Ill. App. 3d at 659.

Relative to *Jiffy Lube International, Inc. v. Agarwal*, 277 Ill. App. 3d 722, 727 (1996), the majority concedes that no "threshold" analysis was conducted in that case. More importantly, however, the petitioner in the *Jiffy Lube* case alleged prejudice and supported his allegations with specifics, namely, that the party had filed a complaint against the trial judge with the Judicial Inquiry Board. *Jiffy Lube*, 277 Ill. App. 3d at 727. The Second District Appellate Court reversed the circuit court's denial of the motion to substitute, stating:

> "The petition in the case at bar was heard and denied by *** the same judge from whom defendant sought the substitution. Such a procedure is not in compliance with the statute, which mandates that such a petition shall be heard by a judge other than the judge named in the petition." *Jiffy Lube*, 277 Ill. App. 3d at 727.

I unquestionably agree with the outcome of the *Jiffy Lube* decision, but I find it to be of little instructive value on the issue before us. First, in *Jiffy Lube*, there was clearly a specific cause of prejudice articulated in the underlying motion for substitution of judge, which,

if taken as true, would without a doubt be a basis for substitution of the judge. The filing of a Judicial Inquiry Board complaint against the judge before whom the case was pending was an extrajudicial occurrence that strongly called into question the judge's ability to remain fair, objective and impartial. There is no comparison to that factual scenario and Bailey's claim that the judge here found her testimony to be unbelievable. I agree; it was improper for the judge in *Jiffy Lube* to deny transfer of the petition. Second, there is no citation, analysis or mention of section 2—1001(a)(3)(ii) at issue in *Jiffy Lube*.

Based on the language of sections 2—1001(a)(3)(ii) and (a)(3)(iii) and the *Estate of Hoellen* and *Alcantar* cases, I would not depart from the two-step analysis that circuit courts have applied prior to today's decision.

## II. THE MAJORITY'S THRESHOLD ANALYSIS

The majority holds, in the alternative, that even if it applied the threshold analysis under subsection (ii), it would find that Bailey's petition sufficiently pleaded bias supported by specific causes. I strongly disagree with any after-the-fact investigation of the record for purposes of filling in the blanks left by Bailey. She apparently did not find anything in the record sufficiently supportive of her claim of bias that would merit inclusion in her petition or in her briefs on appeal. However, the majority has done that for her in this case in addition to excusing her failure to submit an affidavit in support of her motion without any apparent rationale. While examination of the record is indispensable to resolving every case, it is not this court's responsibility to examine the record for the purpose of filling in the omitted specific causes required by the statute. I cannot help but note that this implies a certain amount of advocacy that benefits only Bailey, yet the majority has criticized the circuit court for its advocacy on Williams' behalf. In my view, it is not this court's function to revive a statutorily insufficient petition. We may not further ignore the statutory mandate that the petition be supported by affidavit of the movant.

It is important to note that all of the statements upon which the majority relies in deciding that Bailey's petition was sufficient were not found in Bailey's motion for substitution of judge or in her briefs on appeal. For example, the court's doubt of Bailey's representation that Wilson's level of dementia was slight, the court's suggestion that Bailey misunderstood her authority under a power of attorney, the court's belief that putting over $150,000 in cash in a closet was improper, and the court's view that Wilson may have been left alone are not mentioned anywhere in Bailey's motion or in the briefs on ap-

peal. I would further suggest that they were not included in the motion by Bailey because those facts were very unfavorable to her.

The proceeding on June 8, 2006, which was the hearing for Bailey's motion for a TRO against the GAL and Williams, was the basis for Bailey's motion for substitution of judge. At this point, the judge was being asked to return control of Wilson's money and healthcare to the woman who allegedly took several hundred thousand dollars and built an addition on her own home, purchased horses, a Ford F-350 Super Duty pickup truck, allegedly for an 86-year-old woman, paid taxes on property that Wilson did not own and deposited cash taken from Wilson's retirement fund into her personal checking account before abandoning Wilson at a time when she no longer had the ability to use language as a form of communication. I have no quarrel with the circuit court's decision to inquire of Bailey before deciding whether to give her control over Wilson's purse strings and health and to remove the GAL and the temporary guardian.

It is well-settled law in this state that the court is not required to sit mute and that the circuit court may question a witness in order to elicit the truth or to bring enlightenment on material issues which seem obscure. See *People v. Palmer*, 27 Ill. 2d 311, 314 (1963); *People v. Byers*, 11 Ill. App. 3d 277, 279 (1973); *People v. Trefonas*, 9 Ill. 2d 92 (1956); *Olsen v. Staniak*, 260 Ill. App. 3d 856, 864 (1994); *People v. Green*, 17 Ill. 2d 35 (1959); *People v. Bradley*, 128 Ill. App. 3d 372, 382 (1984).

I do not find the circuit court's inquiry of Bailey to be adversarial, hostile or sarcastic when read in its entirety and in light of the troubling facts that had been disclosed to the court by the GAL, the temporary guardian and Bailey herself. Though it is true that the circuit court indicated that it did not believe Bailey, I do not view this expression as an indication of the court's bias, but rather, the circuit court's finding based on Bailey's testimony and credibility. See *Liteky v. United States*, 510 U.S. 540, 127 L. Ed. 2d 474, 114 S. Ct. 1147 (1994) (judicial rulings alone almost never constitute valid basis for a bias or partiality motion). Also, although the majority finds it significant that the court's questioning of Bailey spanned 15 pages in the transcript, it makes no mention of the approximately 2,000 remaining pages of record that clearly demonstrate the circuit court's patience, fairness and willingness to hear all parties' claims and concerns throughout the trial. Instead the majority relies on its own ability to discover the portions of the record that it found would have been relevant had they been included and properly alleged in a motion for substitution of judge, which did not occur here.

Moreover, the questioning undertaken by the circuit court that Bailey complains of concerned the immediate welfare and protection of the alleged disabled person and her estate. Bailey was seeking to regain control of Wilson's finances and healthcare though a TRO and emergency motion when she was examined by the court. In this case "the immediate welfare and protection of the alleged disabled person and his or her estate shall be of paramount concern, and the interests of the petitioner, any care provider, or any other party shall not outweigh the interests of the alleged disabled person." 755 ILCS 5/11a—4 (West 2006).

Here, I would hold that Bailey did not meet the threshold showing of bias or prejudice required to transfer the motion to another judge under *Estate of Hoellen* and *Alcantar*. The motion for substitution made no reference to any evidence of personal bias stemming from an extrajudicial source, or other specific improper conduct, statement, gesture or other indication of partiality or bias, and was not supported by affidavit. Respondent simply stated that the circuit court placed respondent under oath, asked questions of an adverse nature and indicated that it did not believe respondent. Respondent refers to actions in which the circuit court was not only permitted, but indeed required, to take given the physical and financial circumstances under which Wilson was brought to the attention of the court. Moreover, this was not a case where the judge summarily denied Bailey's motion for substitution of judge. The judge allowed a brief in support of the motion, a response and a reply to the response before a hearing was had on the motion. In addition, when taken together with the timing of the petition and the short shrift that respondent gave the motion in both the lower court and on appeal, the circumstances suggest that the purpose of the petition may have been merely to delay the proceedings.

## III. CONCLUSION

Based on the evidence in the record and the previous decisions of this court, I would affirm the circuit court's ruling that respondent's motion for substitution of judge for cause was insufficient on its face because it was not verified by affidavit of the movant and it did not support the allegation of personal bias or prejudice with a specific fact or facts demonstrating bias. Accordingly, I dissent.